*In re* ESTATES OF CHERRY WHITTINGTON *et al.* (Jean Lyons, Guardian of the Person and Estate of Richard Raymond Whittington, a Minor, Respondent-Appellant, *v.* Daniel Bute, Conservator of the Estate of Cherry Whittington, an Incompetent, *et al.*, Petitioners-Appellees).

Third District   Nos. 3—83—0519, 3—83—0552, 3—83—0701 cons.

Opinion filed April 25, 1984.—Rehearing denied June 14, 1984.

Kenneth A. Kozel, of Petz & Kozel, P.C., of La Salle, for appellant.

Kevin D. Kelly, of La Salle, and Sidney Z. Karasik, of Chicago, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

This appeal arises as a result of a conservatorship and guardianship both of which were established after Cherry Whittington shot and killed her husband, on May 2, 1978. In December of 1978 Cherry Whittington was found not guilty by reason of insanity and was sent to the Zeller Mental Health Center. At the time of the shooting Ri-

chard Whittington, Cherry's only child, was two months old, and he immediately went to live with his great aunt, Jean Lyons, who was later appointed his guardian. Daniel Bute was appointed the conservator of Cherry Whittington and of her estate.

In November of 1979, Cherry was released from Zeller and immediately was admitted to Monroe House, a halfway house in Peoria, for treatment. In 1981, Cherry married Howard Price, who had employed her as a housekeeper. Soon after her marriage she filed a petition in the circuit court of La Salle County to have her conservatorship terminated and the guardianship of her minor child Richard terminated and his custody restored to her. The trial judge denied her petition.

On March 8, 1983, a new judge was assigned to the conservatorship case. On March 18, 1983, Cherry again filed a petition for termination of the guardianship of Richard and her conservatorship. Three days later Cherry filed an identical petition together with a letter asking that the guardianship and conservatorship matters be consolidated. On May 9, 1983, Cherry filed another petition to terminate the guardianship and to have Daniel Bute discharged and her conservatorship terminated. On May 24, 1983, a fourth petition was filed this time by Daniel Bute. This petition was only a petition to terminate the conservatorship and Cherry was the only person notified of the hearing set for June 3, 1983. Cherry, her husband Howard Price, Daniel Bute and a neighbor of the Prices appeared on June 3. The conservator submitted a letter from a psychiatrist who had examined Cherry only twice, once in 1978 shortly after the shooting and once in April of 1983. Based primarily upon the self-serving statements of these parties, the judge ordered the conservatorship terminated. On August 1, 1983, Jean Lyons, Richard's guardian, filed a motion to reconsider which was denied.

On July 1, 1983, Cherry filed a petition to terminate the guardianship and restore custody. Jean Lyons then filed a motion to dismiss, and Cherry filed a motion for summary judgment. On August 22, 1983, the trial judge denied Lyon's motion to dismiss and granted Cherry's motion for summary judgment. The judge, however, stayed execution of the judgment which restored custody to Cherry Whittington Price pending the outcome of this appeal. The order granting termination of the conservatorship of Cherry Whittington, the order granting motion for summary judgment terminating the guardianship of Richard Whittington and restoring custody to Cherry Whittington Price and the order staying from execution are all being appealed and are all consolidated in this appeal.

The appellant, Jean Lyons, guardian, raises as the first allegation

of error the failure of the trial court to notify her of the hearing at which the conservatorship of Cherry Whittington was terminated and she was declared to be competent. The appellee argues that the statutory provisions for notice were fully complied with. Since the guardianship and conservatorship commenced in 1978 the statute has undergone substantial revision. The provision governing notice in a proceeding to restore competency in effect in 1978 was section 11—14 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 11—14). Subparagraph (b) provided as follows:

> "(b) Notice of the hearing on any petition to be adjudged competent or for revocation of letters of office shall be given to the representative and to such other interested person as the court directs ***."

We agree with the appellee that this section is no longer in effect, but we do not find this factor alone determinative of the notice issue. The new section 11a—20 (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—20) does indeed provide that

> "(c) Notice of the hearing on a petition under this Section *** shall be given to the ward, unless he is the petitioner, and to the guardian ***."

However, where the present statute describes the duties of the guardian of the person under section 11a—17 and of his estate, section 11a—18, the statute specifically states that the guardian "shall have custody of the ward and his minor and adult dependent children; shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance ***" (Ill. Rev. Stat. 1981, ch. 110½, par. 11a—17(a)) and "shall apply the income and principal of the estate so far as necessary for the comfort and suitable support and education of the ward, his minor and adult dependent children ***" (Ill. Rev. Stat. 1983, ch. 110½, par. 11a—18(a)). Therefore, if the conservatorship and guardianship had arisen under the present statute, the guardian of Cherry Whittington would also have had the care and custody of her minor child, Richard, and would have been entitled to notice under the statute.

■ Furthermore, the termination of the conservatorship and the termination of the guardianship of Richard had been consolidated. In fact, Cherry Whittington's attorney had asked that the two matters be heard together and by the same judge. We agree that these matters belonged together. The initial petition filed in March of 1983 was a consolidated petition, and certainly under those circumstances Jean Lyons as guardian of Richard Whittington would have been entitled to notice. Also, by interpreting the notice provision of section 11a—20

broadly, we avoid a possible due process violation. Because the adjudication of competency at the first hearing directly affected the outcome of the subsequent proceeding to terminate the guardianship of the child, we find that the trial judge erred in strictly construing the notice provision of section 11a—20.

We note further that the judge considered and ruled upon Jean Lyons' motion for reconsideration of the termination of the conservatorship even though he found that she was not a proper party to the proceeding. This action on the part of the trial court was clearly inconsistent with the court's interpretation of the notice provision of the statute. We, therefore, find that Jean Lyons, guardian of Richard Whittington, was entitled to notice of the hearing for termination of Cherry Whittington's conservatorship and would have received notice had the conservatorship arisen under the present statute.

■ The appellant, Jean Lyons, has also appealed from the decision to terminate the guardianship of Richard Whittington. We agree with appellant that the trial court should not have granted the appellee's motion for summary judgment. Summary judgment will not be granted when there is a genuine issue of material fact. In this case even the appellee's affidavits were contradictory. Cherry Whittington stated that she had not had therapy nor had she taken medication "for a long time," while the affidavit of Dr. Lee states that he saw her early in 1983 and prescribed medication for her at that time. Furthermore, in Lyons' affidavit she stated that Howard Price, Cherry's husband, had had a drinking problem for 25 years and attached exhibits from medical records which indicate that Cherry feared Howard's drinking bouts. This hardly suggests that the Price's portrayal of domestic euphoria was exactly as they had averred.

On several occasions during this proceeding the judge referred to what he called a presumption that a parent has first call upon the custody of a child. The Illinois Supreme Court, however, has frequently stated the standard in Illinois in custody matters as the "best interest of the child" standard. Fitness of the parent is only one element to be considered in determining what is in a child's best interest. In this case, the only evidence before the court had to do with Cherry's fitness. There was no evidence suggesting that Richard was anything but healthy, well adjusted and happy living with Jean Lyons. The fact is that Richard had never known another home and Cherry was for all practical purposes a stranger to him.

■ In *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417, the Illinois Supreme Court awarded custody to a young boy's grandfather in a similar situation. The court considered

along with other testimony the testimony of a child psychiatrist and determined that considering all of the circumstances "it was not conducive to the child's best interest to remove him from a stable and adequately wholesome environment for the apparently primary purpose of placing him with his natural father who was for all practical purposes a stranger." (42 Ill. 2d 201, 211.) We do not find that the circuit court applied the correct standard in awarding custody to Cherry Whittington because the trial judge considered only evidence as to the fitness of the natural mother and not evidence of what was in the best interest of the child. We commend the trial judge for granting stay of execution so that this case could be properly reviewed.

We, therefore, reverse both decisions of the circuit court of La Salle County and remand this case for proceedings consistent with our opinion in this matter.

Reversed and remanded.

SCOTT and HEIPLE, JJ., concur.