107 Ill.2d 169 (1985)
483 N.E.2d 210
In re ESTATE OF CHERRY WHITTINGTON, An Incompetent, et al. (Jean Lyons, Guardian, Appellee,
v.
Daniel Bute, Conservator, et al., Appellants).
No. 60506.
Supreme Court of Illinois.
Opinion filed June 5, 1985.
Rehearing denied September 27, 1985.
*170 Kevin D. Kelly, of La Salle (Sidney Z. Karasik, of Chicago, of counsel), for appellants.
Petz & Kozel, of La Salle (Kenneth A. Kozel, of counsel), for appellee.
Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.
*171 JUSTICE SIMON delivered the opinion of the court:
On May 2, 1978, the petitioner, Cherry Whittington, killed her husband. After trial on charges of murder and manslaughter, she was found not guilty by reason of insanity. She was committed to the Zeller Mental Health Center in December 1978, where she remained until November 1979, when she was released to the care of a halfway house in Peoria. Daniel Bute was appointed conservator of the petitioner's estate in 1978 when she was judged incompetent. At the time of the killing, the petitioner's two-month-old son, Richard Whittington, was placed with his great aunt, Jean Lyons, the respondent in this case. Lyons was later appointed Richard's guardian, and the child has lived with her ever since.
In 1981, the petitioner married Howard Price. Soon after, she filed a petition in the circuit court of La Salle County to terminate the conservatorship of her estate and the guardianship of her son and to have the child returned to her custody. The circuit court denied the petition on February 5, 1982. A new judge was assigned to the conservatorship in March 1983, and the petitioner then filed a series of petitions for termination of both the conservatorship and the guardianship, none of which were ruled upon. On May 24, 1983, Daniel Bute filed a petition to terminate the conservatorship, but did not give notice to the respondent. After a hearing on Bute's petition on June 3, 1983, at which the petitioner, Howard Price, Bute, and a neighbor of the Prices testified and a letter from a psychiatrist who had examined the petitioner was submitted, the judge ordered the conservatorship terminated. Upon learning of the order, the respondent filed a motion to vacate and another to reconsider the order, both of which were denied.
On July 1, 1983, the petitioner filed a petition to terminate Richard's guardianship and return him to her *172 custody. The respondent filed a motion to dismiss, and the petitioner moved for summary judgment. On August 22, 1983, the judge denied the respondent's motion for dismissal and granted the petitioner's motion for summary judgment, which resulted in an order terminating Richard's guardianship and restoring custody to the petitioner. However, execution of the custody order was stayed pending appeal of both of the orders  that terminating the conservatorship as well as that terminating the guardianship. The appellate court reversed both orders. (124 Ill. App.3d 198.) Leave to appeal to this court was granted under our Rule 315 (87 Ill.2d R. 315).
Two issues are presented in this appeal: first, whether the legal guardian of a minor child has the right to be given notice of and to be present at a hearing on a petition to terminate the conservatorship of the child's mother's estate; and second, whether it was proper to grant summary judgment on the petition to terminate Richard's guardianship and change his physical custody. Our answer to both inquiries is in the negative.

TERMINATION OF THE CONSERVATORSHIP OF PETITIONER'S ESTATE
The petitioner appeals from the decision of the appellate court reversing the circuit court's order terminating the conservatorship of her estate. The respondent successfully argued to the appellate court that she was entitled to notice of the hearing on the conservatorship. The petitioner argues that under the statute applicable at the time of the hearing, section 11a-20(c) of the Probate Act of 1975 as amended (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 11a-20(c)), the respondent was not entitled to notice. That statute provides:
"(c) Notice of the hearing on a petition under this Section, together with a copy of the petition, shall be given to the ward, unless he is the petitioner, and to the *173 guardian, not less than 14 days before the hearing."
The guardian referred to in section 11a-20(c) was Daniel Bute, referred to above as the conservator. He gave notice of the hearing and a copy of the petition to Cherry Whittington, the ward, and the only person to whom the statute required notice be given under these circumstances. Thus the statutory requirements were met.
The respondent argued to the appellate court that, under the notice provision in effect in 1978 when the conservatorship was established, she was entitled to notice as an "interested person." At that time, the statute provided:
"(b) Notice of the hearing on any petition to be adjudged competent and for revocation of letters of office shall be given to the representative and to such other interested persons as the court directs * * *." (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 11-14(b).)
The appellate court noted that this section was not in effect at the time the question of notice was pertinent; when the petition was filed and the hearing held, this section had been replaced by section 11a-20(c), quoted above, which required notice to no one but the petitioner in this case.
However, the appellate court decided that if the guardianship and conservatorship had been established under the present statute, the petitioner's conservator would also have had the care and custody of Richard, and would therefore have been entitled to notice. This is, however, an erroneous statement of the law. Section 11a-17 (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 11a-17) describes the duties of the guardian of a person; section 11a-18 (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 11a-18) describes the duties of the guardian of an estate, sometimes referred to herein as a conservator. Nothing in this statute warrants the assumption that the guardian *174 of an incompetent's estate must also be the guardian of the incompetent's person, much less the guardian of the incompetent's minor children. Moreover, in this case, the conservator of the petitioner's estate was not Richard's guardian; the respondent was. Thus, the appellate court erred in assuming that the respondent would be entitled to notice under the present statute.
The appellate court also stated that the question of terminating the conservatorship had been consolidated with that of terminating Richard's guardianship, and that "these matters belonged together." While it is true that the petitioner had filed a consolidated petition in March 1983, the petition actually considered by the circuit court was Bute's petition to terminate the conservatorship only. The termination of the conservatorship and guardianship could have been considered together, as they were at the 1981 hearing, if the circuit court had consolidated the matters. However, it was certainly not necessary for the circuit court to do this because they present different questions. Moreover, since neither Richard nor his guardian has any justiciable interest in the conservatorship of the petitioner's estate, it is difficult to understand the appellate court's concern that failure to give them notice of the hearing to terminate the petitioner's conservatorship might violate due process.
The respondent next argues that she was entitled to notice of the hearing to terminate the conservatorship because the outcome of that hearing directly affected the proceeding to terminate Richard's guardianship. While it would almost certainly be fruitless for an adjudged incompetent to file a petition for restoration of custody of a minor child, whether the petition were filed under the Probate Act of 1975 or the Illinois Marriage and Dissolution of Marriage Act, restoration of the petitioner's competence could hardly determine the outcome of a custody hearing at which the petitioner's fitness to have custody *175 would still be at issue, and the respondent would have the opportunity to present evidence and cross-examine the petitioner's witnesses regarding the petitioner's emotional stability. Moreover, even if this argument were valid, the fact would remain that the respondent had no justiciable interest in the conservatorship of the petitioner's estate, and no statutory right to notice of a hearing to terminate the conservatorship.
Because we so hold, we need not address the petitioner's additional argument that the hearing given the respondent by the circuit court on her objections to the termination of the conservatorship cured any defect that might have resulted from lack of notice to the respondent. We need only add that the hearing conducted by the circuit court appears to have been adequate, and that the decision was fully supported by the evidence in the record. We therefore affirm the circuit court's order terminating the petitioner's conservatorship.

TERMINATION OF RICHARD'S GUARDIANSHIP AND RESTORATION OF PETITIONER'S CUSTODY
With respect to the petition to terminate Richard's guardianship and return him to the petitioner's custody, the respondent argues initially that the circuit court erred in denying her motion to dismiss the petition. The respondent's motion was based on section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 610), which provides:
"(a) No motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.
(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have *176 arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
(1) the custodian agrees to the modification;
(2) the child has been integrated into the family of the petitioner with consent of the custodian; or
(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."
The respondent argues that nothing was alleged by the petitioner that had not been presented at a hearing on her earlier petition, which had been ruled on only 14 months before, and that section 610 therefore required that respondent's motion to dismiss be granted.
However, this case does not involve a custody dispute incident to a marriage or dissolution of a marriage; it involves a custody arrangement established under the Probate Act of 1975. Moreover, the respondent failed to show how any of the purposes of the Illinois Marriage and Dissolution of Marriage Act set out in section 102 (Ill. Rev. Stat. 1981, ch. 40, par. 102) apply to this case. Because the provisions on which the respondent relies do not apply to the facts of this case, we conclude that the trial court properly denied the respondent's motion to dismiss.
The petitioner argues that the appellate court erred in reversing the circuit court's order allowing summary judgment in her favor. Summary judgment is appropriate only when the pleadings, depositions, admissions on file, and affidavits present no genuine issue of material fact and the moving party is entitled to a judgment as a *177 matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2-1005(c).) In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. (Kolakowski v. Voris (1980), 83 Ill.2d 388, 398.) We agree with the appellate court that summary judgment should not have been granted in this case.
In In re Custody of Townsend (1981), 86 Ill.2d 502, this court noted:
"In child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person. The presumption is not absolute and serves only as one of several factors used by courts in resolving the ultimately controlling question of where the best interests of the child lie. [Citations.] A court need not find that the natural parent is unfit or has forfeited his custodial rights before awarding custody to another person if the best interests of the child will be served. [Citations.] This standard or `guiding star' [citation] is a simple one designed to accommodate the often complex and unique circumstances of a particular case." (86 Ill.2d 502, 508.)
In People ex rel. Edwards v. Livingston (1969), 42 Ill.2d 201, this court recognized that under the predecessor of section 11-7 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110 1/2, par. 11-7) the superior-right doctrine operates within the context of the best-interests standard.
The paramount standard, then, for determining a custody dispute under the applicable statute and case law is the best interest of the child. In determining the best interest of the child a court must consider all relevant factors. Section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 602) enumerates a useful reference list of relevant factors. Of *178 obvious importance in the present case is the capacity of the parties to care for a child appropriately; the length of time Richard has been in the respondent's custody; his adjustment to home, school, and community; the mental and physical health of all the parties involved; and the potential for physical violence and alcohol abuse in the homes in which he might be placed.
Clearly, a custody decision in a case such as this requires a careful determination of the relevant facts and a sensitive weighing of a series of factors. A summary judgment proceeding is ill suited to such a determination. In this case, moreover, issues of material fact were raised by the affidavits and pleadings, including the petitioner's emotional stability, her husband's sobriety, the respondent's emotional stability, and the economic motivation of the parties in seeking Richard's custody in view of a modest sum he received from an insurance policy on his father's life. These are of crucial importance in making a custody decision. These facts, as well as the effect of removing seven-year-old Richard from the home in which he has been cared for since he was two months old, can only be established and weighed at a hearing on the merits at which both parties are free to present evidence and to cross-examine each other's witnesses.
The judgment of the appellate court reversing the termination of the conservatorship is reversed; its judgment reversing the entry of summary judgment on the issue of the guardianship is affirmed. The judgment of the circuit court terminating the conservatorship is affirmed; its entry of summary judgment on the issue of the guardianship is reversed, and the cause is remanded to the circuit court for proceedings consistent with this opinion.
Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.