JEWISH HOSPITAL OF ST. LOUIS, MISSOURI, *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. BOATMEN'S NATIONAL BANK OF BELLEVILLE, as Coex'r of the Estate of Abe I. Small, Deceased, and as Cotrustee of the Testamentary Trust under the Will of Abe I. Small, Deceased, Defendant-Appellee and Cross-Appellant (Donald Rice, Indiv., *et al.*, Defendants-Appellees).

Fifth District No. 5—92—0364

Opinion filed April 15, 1994.—Rehearing denied June 3, 1994.

752

Ray H. Freeark, Jr., and James R. Mendillo, both of Freeark, Harvey, Mendillo, Dennis, Wuller & Buser, of Belleville, for appellants.

Joseph E. Martineau, of Lewis, Rice & Fingersh, of St. Louis, Missouri, for appellee Boatmen's National Bank of Belleville.

Philip G. Feder, of Belleville, and Curtis L. Blood, of Collinsville, for appellees Donald Rice and Rice Sullivan & Company, Ltd.

Hinshaw & Culbertson, of Chicago (Nancy G. Lischer and Mark D. Bauman, of counsel), for appellee Robert L. Jennings.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:
Plaintiffs appeal from the entry of summary judgment against plaintiffs and in favor of all defendants on all counts of plaintiffs' fourth amended complaint. The primary issues raised in this case are

(1) whether an attorney who drafts a will owes a duty in contract or in tort to the remainder beneficiaries of testamentary trusts; (2) whether an attorney for an estate owes a duty in contract or in tort to the beneficiaries of the estate for improperly preparing the Federal estate tax return; (3) whether an attorney for the estate owes a duty in contract or in tort to the beneficiaries to reform the will so as to avoid estate taxes; (4) whether an accountant, hired as a tax expert, owes a duty in contract or in tort to the remainder beneficiaries of testamentary trusts; (5) whether an accountant owes a duty in contract or tort to the beneficiaries of an estate for improperly preparing an estate tax return; (6) whether an executor owes a duty in tort or a fiduciary duty to the beneficiaries for filing an improper estate tax return prepared by the attorney for the estate, failing to timely reform the testator's will so as to avoid estate taxes, failing to hire a competent attorney, and failing to advise the beneficiaries of the tax consequences and possible remedies for avoiding taxes; and (7) whether a testamentary trustee owes a duty in tort or a fiduciary duty to the beneficiaries of the trust to monitor the acts of the executor for improper administration of the estate.

The plaintiffs, Jewish Hospital of St. Louis and the Jewish Center for the Aged, are the remainder beneficiaries of two testamentary trusts established by the last will and testament (the will) of Abe I. Small (the testator). Defendant Boatmen's National Bank of Belleville (the Bank) was named under the will as the coexecutor of the estate, together with the testator's wife, Merla Small (the testator's wife). Both the testator's wife and the Bank were also named as cotrustees of the two testamentary trusts set up under the will.

Defendant Robert Jennings (Jennings) is the attorney who drafted the will, and he also represented the estate during probate of the will and the preparation and filing of the Federal estate tax return. Defendant Donald Rice (Rice) is a certified public accountant and a partner in an accounting firm, defendant Rice Sullivan & Co., Ltd. (the accounting firm). Rice and his accounting firm provided accounting services to the testator and to Jennings in his representation of the testator and the estate. The estate paid $878,709 in estate taxes and interest as a result of a tax deficiency declared by the Internal Revenue Service (IRS). The crux of plaintiffs' claim against all the defendants is that the defendants' negligence caused the estate to unnecessarily pay $878,709 in estate taxes and interest, which reduced the amount plaintiffs will receive.

Plaintiffs filed their action against defendants to recover the tax liability as money damages incurred by the alleged negligence of Jennings and Rice and the accounting firm in the preparation of the

testator's will and estate plan. Plaintiffs also claimed that all of the defendants were negligent in their handling of the estate after the testator's death, due to their collective failure to timely reform the will or timely advise the beneficiaries of this option. Additionally, plaintiffs allege that the Bank was negligent in its duties as coexecutor in hiring an unqualified attorney, Jennings, to represent the estate and negligent in its duties as cotrustee of the residual trust in not protecting the interests of the trust and its beneficiaries.

On December 4, 1991, the trial court found that there were no genuine issues of material fact and entered summary judgment in favor of all defendants "for the reasons stated" in each defendant's respective motion for summary judgment. The court ordered each party to bear its own costs. The court denied plaintiffs' motion to vacate and/or to reconsider and denied the Bank's motion to modify, which requested the court to modify its judgment to include an award of attorney fees to the Bank. Plaintiffs appeal from the entry of the summary judgment in favor of defendants, and the Bank cross-appeals from the trial court's denial of its motion for attorney fees. For the reasons stated below, we affirm in part, reverse in part, and remand.

## I. LAW REGARDING SUMMARY JUDGMENT

"Pursuant to section 2—1005 of the Code of Civil Procedure, any party 'may move with or without supporting affidavits for a summary judgment in his or her favor for all or any part of the relief sought' against him or her. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—1005(a), (b).) Although the use of a summary judgment procedure is encouraged as an aid in expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. [Citation.] 'In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent.' (*In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177[, 483 N.E.2d 210, 215]; *Tersavich v. First National Bank & Trust [Co.]* (1991), 143 Ill. 2d 74, 80-81[, 571 N.E.2d 733].)" *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271-72, 586 N.E.2d 1211, 1214-15.

Where, as here, plaintiffs appeal from the trial court's grant of summary judgment to defendants, the only issue before the court on review is whether all the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

(*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201.) When a defendant files a motion for summary judgment, the plaintiff must then come forward with evidence to support each and every element of each cause of action pled in order to resist the motion for summary judgment. (*Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 601 N.E.2d 286; *Bakkan v. Vondran* (1990), 202 Ill. App. 3d 125, 559 N.E.2d 815.) However, the reviewing court's function is not to resolve disputed factual issues but only to determine if disputed factual issues exist. (*Bakkan v. Vondran* (1990), 202 Ill. App. 3d 125, 559 N.E.2d 815.) If the court of review determines that a genuine issue of material fact exists, then the entry of summary judgment must be overturned. "A fact is material to the claim in issue when the success of the claim is dependent upon the existence of that fact." *Lindenmier*, 156 Ill. App. 3d at 88, 508 N.E.2d at 1209.

In appeals from summary judgment rulings, the reviewing court conducts a *de novo* review. (*Delaney v. McDonald's Corp.* (1994), 158 Ill. 2d 465; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 607 N.E.2d 1204.) In reviewing the trial court's ruling on a motion for summary judgment, the court of review should consider anew the facts and law related to the case to determine if the trial court was correct. (*Gresham v. Kirby* (1992), 229 Ill. App. 3d 952, 595 N.E.2d 201.) The court of review looks at not only the facts alleged but also the reasonable inferences to be derived from those facts, whether the facts are disputed or not. (*Bakkan*, 202 Ill. App. 3d at 130, 559 N.E.2d at 818.) If there are no facts in dispute but reasonable minds could draw different inferences from the facts, then a triable issue exists which precludes the entry of summary judgment. (*Loyola Academy*, 146 Ill. 2d at 272, 586 N.E.2d at 1215.) Furthermore, facts can be propounded by either direct or circumstantial evidence, but on a motion for summary judgment, a fact will not be considered in dispute if raised by circumstantial evidence alone unless the circumstances or events are so closely related to each other that the conclusions therefrom are probable, not merely possible. *Bakkan*, 202 Ill. App. 3d at 130, 559 N.E.2d at 819.

## II. SUMMARY JUDGMENT IN FAVOR OF ATTORNEY

Plaintiffs' fourth amended complaint includes four counts against Jennings. Count VIII alleges that Jennings was negligent in drafting the testator's will, in that the testator advised Jennings that "he wished his Last Will and Testament to provide the maximum charitable and marital deductions such that there would be minimal estate tax on the bequest." Count VIII further alleges that Jennings

had a duty to plaintiffs "to exercise reasonable care in the performance of professional attorney services, including the drafting of the Last Will and Testament in such a manner as to eliminate or reduce to the extent allowable under the law any taxes, penalties and interest that the Estate would have to pay and including rendering tax advice in preparing the federal estate tax return after the death of Abe I. Small." Count VIII alleges that Jennings breached that duty by negligently drafting the testator's will so that the IRS did not allow the estate to take either the charitable deduction or the marital deduction, and as a direct and proximate result thereof, plaintiffs were damaged by the estate's having to pay taxes and interest, which reduced the corpus of the testamentary trusts.

Count IX also alleges negligence by Jennings, but in his capacity as attorney for the estate rather than as attorney for the testator. This count also alleges a duty to reduce or minimize estate taxes and breach of that duty in negligently filing the Federal estate tax return, negligently failing to advise the estate of the steps necessary to reduce or eliminate the tax liability, negligently failing to realize that the will he drafted would result in substantial tax liability to the estate, and negligently failing to advise any or all of the beneficiaries of the tax implications in a timely manner. Damages alleged under count IX are the same as under count VIII, the amount of the taxes and interest actually paid by the estate.

Counts X and XI allege a third-party beneficiary contract in favor of plaintiffs and breach of that contract in essentially the same manner as alleged under the negligence counts, with count X alleging breach during Jennings' representation of the testator and the drafting of his will and count XI alleging breach during his representation of the estate and in the preparation of the Federal estate tax return. Damages sought are the same in all counts of the complaint: the amount of taxes and interest actually paid by the estate, plus prejudgment interest.

A complaint against an attorney for professional malpractice may lie in either contract or tort, and the recovery may be in the alternative. (*Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185.) *Collins* does not hold, however, that anybody who is aggrieved by attorney malpractice has a cause of action against the negligent attorney. "[I]t is to be noted that the ruling we announce today is limited to the specific field of lawyer malpractice as an exception to the so-called *Moorman* doctrine and to the distinctions separating contract from tort. Today's decision neither changes the duties a lawyer owes his client, *nor does it change the circumstances under which a lawyer may be sued for malpractice,* nor does it change the

damages recoverable." (Emphasis added.) (*Collins*, 154 Ill. 2d at 52, 607 N.E.2d at 1187.) Therefore, we review the propriety of the entry of summary judgment in favor of Jennings, first, as to his duties during the life of the testator and, second, as to his duties after the testator's death in light of *Collins*.

## A. Attorney's Duties in Drafting Will

Here, the evidence regarding Jennings' representation of the testator, when considered in the light most favorable to plaintiffs, is, in relevant part, as follows: In 1977, attorney Walter Ackerman drafted a will for the testator. Ackerman retired, so the testator went to Jennings around 1981 to make some minor revisions to his will. Jennings made the requested changes but left the majority of the will as it had been written by Ackerman. The revised will was executed by the testator on May 11, 1981.

On January 7, 1982, after new Federal tax laws were passed, Jennings mailed a letter to the testator. That letter advised the testator about certain changes in the tax laws and suggested that the testator should set up an appointment with Jennings "to review [his] present Will and estate plan." On January 13, 1982, the testator and his wife came to Jennings' office and discussed estate planning "again," according to Jennings' interoffice memo. That same memo, which describes the meeting between Jennings and the testator and his wife, states, *inter alia*, as follows:

> "I told [the testator] I thought it would be well for him to prepare a current list of his assets showing a complete list of everything that he and Mrs. Small owned, the approximate worth, and hwo [*sic*] it's owned, and then he shoudl [*sic*] authorize me to sit down with Don Rice and prepare an estate plan."

The testator called Jennings on January 19, 1982, to instruct Jennings to set up an appointment with Don Rice. According to Jennings, the purpose of the appointment with Rice was to commence the estate plan for the testator and his wife. On January 20, 1982, Abe Small signed the will which was later admitted to probate.

Three basic elements of the will as written by Ackerman in 1977 are still present in the 1982 will at issue herein. First, the will provides that the testator's wife was to receive in trust "one-half (1/2) of the value of [the testator's] adjusted gross estate as finally determined for federal estate tax purposes *** but only to the extent that such interests are allowed as a marital deduction for federal estate tax purposes." The bequest in trust to the wife gave the wife the power of appointment over the corpus of the trust and allowed the trustee to encroach upon the principal of the trust if necessary to

provide adequately for all of the wife's needs. The unappointed principal of the marital trust was to pour over into a residuary trust upon the death of the wife. The residuary trust was created out of the rest of the estate not included in the marital trust. This trust provided that $1,000 per month was to be paid to the testator's sister "for as long [as] she shall live," and the wife of the testator was to receive the balance of the income of the trust until her death. The trustees of the residuary trust had the power to encroach upon the principal as necessary for the benefit of the sister. Finally, after the deaths of both the testator's wife and the testator's sister, the remainder of the estate, if any, is bequeathed in equal parts to each of the plaintiffs. The only difference in the above-listed provisions of the 1982 will and the 1977 will drafted by Mr. Ackerman is that the 1977 will provided only $500 per month for the life of the testator's sister, whereas the 1982 will gave her $1,000 per month. The will drafted in 1981 by Jennings included the increase from $500 to $1,000 for the testator's sister as well as the majority of the provisions from the 1977 will. Essentially, Jennings made only minor changes to the 1977 will in 1981 and again in 1982.

On January 27, 1982, the testator and his wife went to Florida and did not return until the end of February 1982. In the meantime, Rice and Jennings continued to confer with each other about the tax ramifications of the 1982 will. On February 4, 1982, Rice and Jennings met to discuss Small's estate plan. Jennings' memo of that date stated that both Rice and Jennings agreed that a charitable remainder unit trust might be one way of reducing taxes. By creating a charitable remainder unit trust benefiting the Abe and Merla Small Cancer Research Fund of Jewish Hospital, "substantial savings could be affected." According to the memo, Rice was to check into setting up the trust and the "tax ramifications thereof."

On March 18, 1992, Jennings and Rice met with the testator and his wife. At that meeting, Rice presented a typewritten document, entitled "Effect of Charitable Remainder Unitrust," to the Smalls. The document given to the Smalls stated, *inter alia*: "No federal Estate Tax would be payable by either estate whether or not a Charitable Remainder Unitrust is established."

There is no evidence in the record to refute the fact that Rice, with Jennings present, assured the testator that his estate would not have to pay any Federal estate taxes under the 1982 will. We note that Jennings devotes an entire section of his brief to the argument that summary judgment was properly entered in his favor because he did not give any tax advice to the testator. However, he does not deny that his files contain numerous references to tax advice and

estate planning for the testator and his wife. He does not deny that he participated in the meetings and consultations with Rice or that he was present when Rice issued the statement to the testator and his wife that assured them that the estate would not have to pay any taxes. Furthermore, there is no evidence that either Rice or Jennings told the testator that any options were available to him other than the estate plan as embodied in his 1982 will. The fact that Jennings disputes that he rendered any tax advice to testator but does not deny the documentary evidence and inferences to the contrary can be nothing other than a genuine issue of a material fact.

Generally, an attorney owes a professional obligation only to his client, not to nonclient third parties. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 515, 546 N.E.2d 499, 502.) Thus, under the general rule, Jennings would only owe a professional obligation to his client, the testator, and not to the nonclient third parties, the plaintiffs, who are connected to the testator only as beneficiaries under his will. However, the supreme court has established that, under limited circumstances, a nonclient may maintain either a negligence action or a third-party-beneficiary/breach-of-contract action against an attorney. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 440 N.E.2d 96.) Regardless of which theory of recovery is pled, nonclient plaintiffs seeking to recover for legal malpractice "must demonstrate that they are in the nature of third-party intended beneficiaries of the relationship between the attorney and client." (*McLane*, 131 Ill. 2d at 517-18, 546 N.E.2d at 503.) "[F]or a nonclient to *succeed* in a negligence action against an attorney, he must *prove* that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party." (Emphasis added.) (*Pelham*, 92 Ill. 2d at 21, 440 N.E.2d at 100.) We, of course, are not deciding if plaintiffs should succeed in their action or whether they have proved or can prove the elements of their various theories of recovery. Rather, we are limited to deciding if plaintiffs have presented evidence to raise a genuine issue of material fact as to those elements. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.

Basically, Jennings argues that he did not owe any duty to plaintiffs because plaintiffs were merely incidental, not primary, beneficiaries of the attorney-client relationship between Jennings and the testator. The question of whether any party owes a duty to another is always a question of law. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499.) Clearly, if Jennings did not have a duty to plaintiffs, summary judgment would be proper, because a necessary element of the negligence cause of action would be missing. Likewise,

an indispensable element of any third-party-beneficiary recovery is that the contract was entered into for the direct benefit of the plaintiffs. If we cannot find a third-party beneficiary contractual duty owed to these plaintiffs by the testator's attorney, summary judgment in favor of Jennings would be proper.

Resolution of the question of whether defendant owed any duty to plaintiffs is dependent upon the intention of the testator and Jennings. Evidence of that intention is derived from a consideration of all of the circumstances surrounding the parties at the time of the execution of the will and the time period during which Jennings gave tax advice to the testator. *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.

■ Illinois courts have applied third-party-beneficiary status to contingent beneficiaries under a will (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224) and to beneficiaries under a will where the devise failed. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499.) However, in *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488, the supreme court declined to extend third-party-beneficiary status to the plaintiffs, who were the wives of two men who had hired the defendant attorney to represent them regarding certain business transactions. The court found the wives to be merely incidental beneficiaries of the relationship between the husbands and the attorney and, as a result, found the wives unqualified to bring a malpractice action against the attorney. *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.

We believe that the rationale of the *Ogle* case is more relevant to the case at bar than the rationale of *York*, since the facts of *Ogle* are closer to the facts of this case than are the facts of *York*. Plaintiffs, in the case at bar, were clearly designated as beneficiaries in the will, and Jennings knew this as he prepared the will. In *York*, there is no indication that the husbands had contracted with the attorney to give advice for the benefit of the wives. The advice and work of the attorney in *York* was for the purpose of extricating the husbands from the legal and criminal problems that confronted the husbands and not the wives. *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.

We fail to discern any significant legal difference between the intended beneficiaries in *Ogle*, who did not inherit due to the negligence of the attorney who prepared the will (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 466 N.E.2d 224), and the plaintiffs in this case, who failed to inherit as much as they should have due to the alleged negligence of Jennings. Plaintiffs herein are vested remaindermen subject to divestment. (See *Whalen v. Whalen* (1991), 217 Ill. App. 3d

557, 559, 577 N.E.2d 859, 860.) The will provided that plaintiffs were entitled to the corpus of the trust unless the corpus was reduced by the exercise of the power of appointment by the wife or by encroachment by the trustees for the benefit of the wife or sister. In *Ogle*, there was nothing in the wills that indicated that the contingent beneficiaries were entitled to anything, unless the husband and wife died in and from a common disaster. The supreme court, however, held that the complaint alleged sufficient facts to allow recovery for malpractice as the complaint alleged that the testator's and testatrix's intent that the contingent beneficiaries should inherit without the contingency of a common disaster was thwarted by the negligence of the attorney who prepared the wills. Unlike *Ogle*, it is clear from the mere reading of the will in the case at bar that the testator intended to benefit plaintiffs.

Our supreme court has strongly embraced the concept that third-party-beneficiary status should be easier to establish when the scope of the attorney's representation involves matters that are nonadversarial, such as in the drafting of a will, rather than when the scope of the representation involves matters that are adversarial, such as was found in *York*. (*Ogle*, 102 Ill. 2d at 363, 466 N.E.2d at 227; *Pelham*, 92 Ill. 2d at 22, 440 N.E.2d at 100; *York v. Stiefel* (1983), 99 Ill. 2d 312, 458 N.E.2d 488.) Further, where the attorney undertakes an affirmative duty, such as rendering tax advice, the duty to perform the function with reasonable care is clear. *Pelham*, 92 Ill. 2d at 24, 440 N.E.2d at 101.

The facts herein, when those facts are construed most strictly in favor of plaintiffs, show that Jennings undertook an affirmative duty of advising the testator about estate planning and estate taxes. The testator had a right to rely on that advice. There is no evidence that the testator did not rely on Jennings' advice. Of course, other evidence may be presented at trial, but the point is, plaintiffs are entitled to present the issues to a fact finder.

We, of course, do not make any decision in this case about whether Jennings was negligent or whether he breached the third-party-beneficiary contract imputed to plaintiffs, but we find only that there are genuine issues of material fact as to counts VIII and X of plaintiffs' fourth amended complaint. Accordingly, summary judgment in favor of Jennings on count VIII, as it relates to Jennings' representation of the testator during the testator's lifetime, was improper. Additionally, the trial court erred in entering summary judgment in favor of Jennings on count X, which alleges a breach of the third-party-beneficiary contract against Jennings in his capacity as attorney for the testator.

## B. Attorney's Duties in Representing the Estate

The next issue we consider is whether there are genuine issues of material fact to support plaintiffs' counts directed at Jennings during his representation of the estate. The facts relating to these counts, when construed most strictly in favor of plaintiffs, are as follows: The testator died on May 31, 1984. Jennings was hired to represent the estate. Jennings drafted and filed the Federal estate tax return with the help of Don Rice. The Federal estate tax return declared that the estate did not owe any taxes. The value of the total gross estate as listed on the return was $4.69 million. In July 1986, the IRS notified Jennings that the charitable deduction and a portion of the marital deduction taken under the estate tax return would not be allowed, basically because the will gave the trustees the right to invade the principal of the charitable trusts on behalf of the testator's wife and sister. The IRS also notified Jennings at this time that the estate would have to pay taxes of $858,520.11.

Jennings was "shocked" when the IRS notified him about the deficiency. He immediately hired an attorney who was more experienced in estate taxation than himself to help him with his dealings with the IRS. Jennings, his attorney, the plaintiffs, the Bank, Rice, and attorneys representing everyone involved participated in numerous meetings. All of the parties tried for a period of at least a year to reform the will in order to avoid the tax liability. Jennings, under the direction of his attorney, prepared and filed with the circuit court a document entitled "Petition to Reform the Will," which in pertinent part stated:

> "That the manifest intention of Abe I. Small in preparing the said Will *** was to provide the maximum charitable and marital deductions and to provide for the support and maintenance of his spouse."

Ultimately, the parties agreed to enter into a settlement with the IRS, because it became clear that the IRS was not going to accept the reformation, as it was not timely filed. There is some evidence to suggest that if the tax liability had been recognized earlier the IRS might have accepted a reformation and that the estate would not have had to pay any estate taxes. The estate did, however, pay a total of $878,709 in taxes and interest to the IRS.

Jennings again argues that he does not owe any duty to plaintiffs as a result of his representation of the estate. Jennings strenuously argues that the relationship between the beneficiaries and himself is adversarial, and he cites *Neal v. Baker* (1990), 194 Ill. App. 3d 485, 551 N.E.2d 704, in support of his argument. In *Neal*, this court held that an attorney hired by an executor to administer an estate had no

duty to a beneficiary of that estate. The basis of the ruling was twofold: First, the scope of the attorney's representation of the executor involved matters that were adversarial as to the plaintiff/ beneficiary, because she was contesting the attorney's decision to require her to pay inheritance taxes that she felt should have been paid by the estate. Second, the contract between the executor and the attorney was intended to benefit the executor and the estate, not the beneficiaries. This court held that the primary purpose of the attorney's relationship with the executor was to assist the executor in the proper administration of the estate. *Neal,* 194 Ill. App. 3d at 488, 551 N.E.2d at 706.

■ The same rationale applies to plaintiffs' claims against Jennings in his capacity as the attorney for the estate. Although the executor owes a fiduciary duty to the estate and the beneficiaries, the executor must also defend terms of the will and the best interests of the estate. (*Greene v. First National Bank* (1987), 162 Ill. App. 3d 914, 516 N.E.2d 311.) Defending the terms of the will often results in an adversarial relationship between the estate and some other party. Often, the estate's adversary is a beneficiary of the estate who is contesting the will or making a claim against the estate or petitioning to have the executor removed or held liable for mismanagement of the estate. (Ill. Rev. Stat. 1991, ch. 110$^1$/2, pars. 8—1, 18—1, 23—2, 24—18.) An attorney representing an estate must give his first and only allegiance to the estate, in the event that such an adversarial situation arises. Even though beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney for an estate cannot be held to a duty to a beneficiary of an estate, due to the potentially adversarial relationship between the estate's interest in administering the estate and the interests of the beneficiaries of the estate. (*Rutkoski v. Hollis* (1992), 235 Ill. App. 3d 744, 600 N.E.2d 1284.) Furthermore, plaintiffs have not explicitedly included or alleged facts that Jennings' primary duty was to plaintiffs rather than to the executors.

In the case *sub judice,* the plaintiffs claim that Jennings was negligent in not attempting to reform the will in time. However, in order to reform the will in order to avoid the tax liability, Jennings would have had to convince a beneficiary, the testator's sister, to renounce some if not all of her benefits, so that the trust went exclusively to the charity. An attorney hired to assist in administering the estate should not be under a duty to persuade devisees and legatees to renounce their share of the estate in order to save taxes. Accordingly, the trial court properly entered summary judgment in favor of Jennings on counts IX and XI and on that portion of count VIII that relates to his representation of the estate.

## III. SUMMARY JUDGMENT IN FAVOR OF ACCOUNTANT

Count V of the fourth amended complaint alleges that Rice was paid to review the testator's 1982 will and to determine the estate tax consequences of that will, and that he was later hired by the estate to render tax advice in the preparation of the Federal estate tax return. Count V further alleges that the primary purpose and intent of the accountant-client relationship between Rice and the testator and, later, his estate was to benefit plaintiffs who are residuary beneficiaries under the will, and that Rice owed a duty to plaintiffs to exercise reasonable care in the performance of professional accounting services, including rendering tax advice in the drafting of the 1982 will and when assisting in preparing the Federal estate tax return. Count V alleges that Rice breached that duty by negligently advising Jennings that the will was drafted so that no estate tax would be owed, and by negligently failing to advise Jennings and the Bank about the tax consequences to the estate and the steps necessary to try to avoid those consequences.

Count VI makes essentially the same factual allegations against Rice but frames its cause of action in terms of breach of third-party-beneficiary contract. Count VII alleges negligence against the accounting firm as the employer of Rice, who was an officer and agent of the corporation and acting within the scope of his authority. The accounting firm does not deny that Rice was its agent and employee and acting within the scope of his authority. Therefore, when discussing issues relating to both parties, references to Rice also serve to refer to the accounting firm.

### A. Accountant's Duties During Life of Testator

■ Rice correctly identifies the main issue of this appeal as it relates to him: "This case presents the question whether an accountant may be liable to a person not his client for either breach of contract or professional negligence." Further, he acknowledges that "this question generally is and should be patterned after the law on liability of an attorney to a non-client." This court has held that an accountant, just as an attorney, can be liable in contract and in tort to his client. (*Jerry Clark Equipment, Inc. v. Hibbits* (1993), 245 Ill. App. 3d 230, 612 N.E.2d 858.) Therefore, having found that there are genuine issues of material fact relating to plaintiffs' claims directed against Jennings as the attorney who drafted the will, we similarly hold that there are genuine issues of material fact relating to the claims against Rice and the accounting firm regarding their roles in advising the testator about the tax consequences of his estate plan.

However, we must briefly discuss our reasoning as to why we feel

that this accountant owed a duty to these plaintiffs, since plaintiffs were not Rice's clients. During the testator's life, Rice provided accounting services only to the testator and Jennings. Thus, the initial question is whether the primary purpose and intent of the accountant-client relationship was to benefit or influence these plaintiffs. (*Brumley v. Touche, Ross & Co.* (1985), 139 Ill. App. 3d 831, 487 N.E.2d 641.) We find that it was.

There was no reason for this testator to seek out and pay for an accountant, other than to get information about estate taxes. The testator would not personally benefit from the avoidance of estate taxes other than having a feeling of satisfaction that he was leaving a larger estate to his beneficiaries than he would have if he could not have avoided the estate taxes. The estate is only a fictional entity that is a conduit for paying the debts of the testator and passing the assets to the intended beneficiaries of the testator. It makes no difference to the estate or to the executor as to whether the creditors, the government, or the beneficiaries receive the assets of the estate. Obviously, the only living or existing parties that benefit from less estate taxes are the beneficiaries of the estate whose share will be increased due to the avoidance of the taxes.

The most reasonable inference from the undisputed fact that the testator used and paid for Rice's services was that he wanted reasonably competent advice about how to avoid estate taxes. Rice and the accounting firm admit that the advice was wrong and that the testator's wife and sister, "without a doubt," could establish a duty owed to them arising from the attorney-client relationship and, by extension, the relationship between Rice and the testator. We cannot see why the accountant does not owe the same duty to the named vested remaindermen as he owes to the wife and sister of the testator. The same reasons for holding the attorney who prepared the will liable for malpractice equally apply to the accountant hired to give the testator tax advice.

Since our previous discussion of the facts relating to the attorney's involvement included the essential facts pertaining to the accountant's involvement as well, we need not reiterate those facts in this section. Essentially, those facts, when construed in favor of plaintiffs, raise questions as to whether Rice should have recognized the estate tax problems inherent in the testator's will during the testator's life. If Rice should have recognized the tax problems, should he also have informed the testator about options available to minimize or avoid those taxes? These are questions that only a jury or judge as fact finder can resolve after considering all of the evidence presented. Therefore, summary judgment is improper as to those

portions of counts V, VI, and VII which are directed at defendants Rice and the accounting firm and which allege facts occurring during the life of the testator.

### B. Accountant's Duties During Administration of Estate

The next question is whether there are any genuine issues of material fact as to the counts directed at Rice which allege negligence or breach of contract during the administration of the estate. Again, the question of whether Rice owed any duty to these plaintiffs is central and controlling. First, we note that Rice was involved during the administration of the estate only to assist Jennings in preparing the Federal estate tax return. Whether he was hired by the executor for the estate or by Jennings is not important. The primary duty of an accountant hired by the executor or the attorney for the executor is not to benefit the beneficiaries; rather, his duty is to the executor so that the executor can fulfill his duties as required by law. *Rutkoski v. Hollis* (1992), 235 Ill. App. 3d 744, 600 N.E.2d 1284.

■ Here, construing the evidence most favorably for plaintiffs, it is clear that Rice provided professional accounting services to the estate by way of assisting Jennings in the preparation of the Federal estate tax return. Contrary to plaintiffs' assertions, Rice was not hired primarily to benefit plaintiffs or to give tax advice to the beneficiaries, but instead he was hired to assist the Bank as coexecutor in the proper administration of the estate. Administration of this estate has so far required only that the trusts to the life beneficiaries be administered. Only after the death of the testator's sister will the residuary trust be paid to plaintiffs. We cannot say that the facts regarding the administration of the estate, even when construed most favorably for plaintiffs, show that the services of Rice were engaged to primarily benefit these plaintiffs. *Rutkoski v. Hollis* (1992), 235 Ill. App. 3d 744, 600 N.E.2d 1284; *Brumley v. Touche, Ross & Co.* (1985), 139 Ill. App. 3d 831, 487 N.E.2d 641.

### IV. SUMMARY JUDGMENT IN FAVOR OF BANK

Counts I through IV of plaintiffs' fourth amended complaint are directed at the Bank in its capacity as coexecutor and cotrustee of the will. Count I charges the Bank, as coexecutor, with negligence in filing an incorrect estate tax return, failure to timely reform testator's will, failure to hire a competent attorney, and failure to timely advise the beneficiaries of the tax consequences and possible remedies for avoiding those consequences. Count II makes essentially the same allegations against the Bank but alleges breach of the Bank's fiduciary duty, instead of pure negligence. Count III is brought

against the Bank in its capacity as cotrustee under the will. Count III alleges that the Bank, as cotrustee, negligently "failed to advise or monitor" itself in its capacity as coexecutor in filing the estate tax return and in not reforming the will, that the Bank failed to file a claim against the attorney or the accountant, and that the Bank failed "to retain an attorney for the Trust to the extent the Trust interest conflicted with the interest of Boatmen's as its Executor." Count IV makes the same allegations against the Bank as found in count III, except that the cause of action is alleged to be breach of fiduciary duty instead of negligence.

■ First, we address the Bank's argument that an exculpatory clause in the will absolves it from all liability. The clause to which the Bank refers states:

"I specifically absolve my Trustees from any responsibility for any loss which may result to the trust or to others in connection with the exercise of the powers granted, except responsibility for wilful misconduct."

Although exculpatory provisions such as this are not given special favor in the law, they are generally held effective except as to reckless or intentional breaches or those committed in bad faith. (*MAJS Investment, Inc. v. Albany Bank & Trust Co.* (1988), 175 Ill. App. 3d 478, 529 N.E.2d 1035.) Based upon our review of the record, we do not find any evidence to support an argument that the Bank, as trustee, acted in any way recklessly, intentionally, or with bad faith or that the Bank's conduct amounted to wilful misconduct.

However, we do not agree with the Bank that the exculpatory clause has any bearing on the question of its liability as coexecutor. The duties of the Bank as trustee are separate and distinct from its duties as executor. (*Greene v. First National Bank* (1987), 162 Ill. App. 3d 914, 516 N.E.2d 311.) Plaintiffs' main complaints involving the Bank include the filing of the Federal estate tax return and the late notification of the beneficiaries about the tax problem. Neither of these problems could have been addressed by the Bank in its capacity as trustee, for it is the executor who is responsible for these duties in the administration of an estate. Therefore, we affirm the entry of summary judgment as to counts III and IV, which are directed at the Bank in its capacity as cotrustee.

■ Having said that, we now summarize the evidence, again in the light most favorable to the plaintiffs, to determine if summary judgment was proper in favor of the Bank in its capacity as coexecutor. Plaintiffs concede that none of the claims against the Bank arise out of actions before the testator's death. After the Bank learned that it had been named coexecutor of the estate, it retained

Jennings as the attorney for the estate. As a rule, the Bank hired the attorney who had drafted the will, unless it was aware of some reason not to hire that attorney. In this case, the Bank had worked with Jennings before on estates, but never on an estate of this magnitude. The Bank did not check on Jennings' qualifications to handle an estate of this size. The Bank did not have in-house counsel of its own or any experts within its organization that could have given it estate tax advice.

When Jennings gave the Bank the Federal estate tax return to sign, the Bank checked the figures for mathematical accuracy but did nothing to make sure it was correct otherwise and did not seek out other opinions about its accuracy or compliance with Federal tax laws. After the IRS notified the estate about the tax liability, the Bank participated with Jennings and his attorney and the others to try to reform the will, but the Bank did not notify the plaintiffs about the liability until several months later. Eventually, the Bank agreed with the others to scrap the reformation effort and accept the IRS' proposed settlement and pay the $878,709 in taxes and interest to the IRS.

The Bank, as the executor of the estate, was required to discharge its duties with as much fidelity and care as a prudent person would ordinarily bring to his or her own affairs. (*People ex rel. Rotchford v. Rotchford* (1936), 284 Ill. App. 262, 1 N.E.2d 249.) The executor is a fiduciary and is held to a high standard of care. The executor must act with the highest degree of fidelity and with the utmost good faith but is required to have only the degree of skill and diligence as executor that he brings to his own personal business. Furthermore, the corporate executor is held to no higher standard than is the individual executor. (*In re Estate of Venturelli* (1977), 54 Ill. App. 3d 997, 370 N.E.2d 290.) The Bank had a right to hire an attorney to handle the legal affairs of the estate, and the Bank had a right to rely on the attorney's advice, unless the Bank knowingly chose incompetent counsel or had some reason to know that the advice given was not sound.

There is no evidence in the record to support plaintiffs' argument that the Bank breached its duty to exercise reasonable care in its hiring of Jennings as the attorney for the estate. The Bank's prior dealings with Jennings were always successful, and the Bank was not aware of any facts indicating that Jennings was anything other than qualified to handle the estate and the preparation of any tax returns. There was no allegation that Jennings was not licensed to practice law in the State of Illinois. Plaintiffs' expert, Dr. Jones, testified that the Bank's employee, Cathy Rubin, was unqualified to

select Jennings, because she only had a high school degree. Plaintiffs cite no authority for the proposition that only college graduates are competent to hire attorneys. Further, plaintiffs' argument that the attorney for the estate must be an expert in estate planning and estate taxation is without merit or citation of authority. While an expert in estate taxation may be necessary to properly prepare an estate tax return in a complicated estate, the administration of an estate requires more than the filing of an estate tax return. The attorney for the estate, if he or she does not have the knowledge or expertise in estate taxes, can always hire an expert. Jennings did so in this case by hiring Rice to assist him. The Bank may or may not have known that Jennings conferred with Rice in the preparation of the Federal estate tax return, but even if it was aware, there is nothing in the record to show that the Bank had any knowledge that Rice was not competent to assist Jennings.

Plaintiffs additionally argue that the Bank had a duty to discover the tax liability, to advise all legatees of the tax deficiency, and to recommend options available to eliminate the tax liability, including reformation. However, plaintiffs do not cite any authority in support of this argument. Therefore, this argument is waived. (*Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387.) Even if this argument were not waived, we would find it to be meritless. See *United States v. Boyle* (1985), 469 U.S. 241, 83 L. Ed. 2d 622, 105 S. Ct. 687 (wherein the Supreme Court held that when an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice); *People ex rel. Rotchford v. Rotchford* (1936), 284 Ill. App. 262, 1 N.E.2d 249 (wherein the administrator of an estate was held not liable to an heir of the estate even though the administrator had failed to timely file a wrongful death action, because the administrator had rightfully delegated this duty to an attorney who had negligently failed to file the suit).

We are not sure that the courts should impose a duty upon an executor to question the terms of the will that the executor is duty bound to execute. Should the Bank be required, as a matter of law, to contact the testator's sister and pressure her into foregoing her benefits under the will in order to increase the plaintiffs' share? If this were the law, an executor could be required to take an unnecessary adversarial position against one of the beneficiaries, and the executor could also be contravening the wishes of the testator. The burden of attempting a reformation of a will should lie with those who wish to change the terms of the will.

Moreover, we are reluctant to impose a duty upon the executor

to give tax advice to some of the beneficiaries. The beneficiaries have access to the will, and they can obtain competent tax advice, if they wish to do so. If executors are to become liable to beneficiaries for not giving competent tax advice to the beneficiaries, the cost of administration of estates will increase. Estate planning can be very complex and unique to each beneficiary. It would be a major undertaking to require the executor to contact all of the beneficiaries and to hire tax experts to assess their individual estates in relation to the testator's bequest in order to see if reformation of the will would be in each beneficiary's best interest.

Therefore, we affirm the trial court's entry of summary judgment in favor of the Bank under counts I and II of the fourth amended complaint.

We note that plaintiffs claim in their reply brief that an additional basis of liability against the Bank is that the Bank did not sue either Jennings or Rice. However, the only pleading asserting this liability is plaintiffs' count III, which charges the Bank as trustee with negligence in not asserting a claim against Rice or Jennings. Having found that the exculpatory clause in the will absolves the Bank as trustee from all liability except wilful misconduct, we find that a charge of mere negligence as a basis for liability cannot lie against the Bank in its capacity as trustee.

■ One final matter we must consider in regards to the entry of summary judgment in favor of the Bank is the cross-appeal filed by the Bank, wherein the Bank claims that it should have been awarded its attorney fees and costs after summary judgment was entered in its favor. As a general rule, trustees and executors are entitled to reimbursement for all expenses and attorney fees properly incurred in the administration of the trust and the estate and in defending the trust and the estate. (*Kerner v. Peterson* (1937), 368 Ill. 59, 12 N.E.2d 884; *Patterson v. Northern Trust Co.* (1919), 286 Ill. 564, 122 N.E. 55; *First Midwest Bank/Joliet v. Dempsey* (1987), 157 Ill. App. 3d 307, 509 N.E.2d 791.) However, given the fact that this case is to be remanded to the circuit court for further proceedings, the Bank's request for attorney fees is premature at this point. We do not know if the parties will seek to further amend their pleadings or if the court will allow any amendments, and we do not know the extent of the Bank's participation in the lawsuit from this point forward. Accordingly, the trial court's denial of the Bank's motion to modify, seeking an award of reasonable costs and attorney fees, is affirmed. We do not, however, by this opinion, preclude the Bank from raising the issue after final disposition of the case in the trial court.

■ Finally, we briefly consider plaintiffs' argument that they are entitled to summary judgment in their favor and against defendant Jennings because, plaintiffs argue, his negligence is uncontroverted. We disagree. As we have previously pointed out, many of the facts regarding Jennings' liability are disputed, and many more facts, although not disputed, are subject to divergent inferences by the parties. Furthermore, the respective positions taken by Jennings as the attorney and Rice as the accountant are somewhat contradictory. All of these matters are solely to be determined by the fact finder after all of the relevant evidence has been presented.

## V. CONCLUSION

It is tempting to include in this opinion many issues that could have been raised or may be raised upon remand. Suffice it to say that we reviewed the duties of each party according to the individual title or job that the party was performing. We did not, for instance, lump the duties of attorney for the testator together with the duties of the attorney for the estate, as the plaintiffs so wished. We also limited our opinion to those allegations contained in the complaint. Where we found no liability based on the allegations in the complaint, there may be liability if properly charged and proven. Where there appears to be liability at the summary judgment stage of the proceedings, such liability may be dissipated when all the facts and defenses are presented to the trier of fact.

For all of the reasons stated herein, we affirm the trial court's entry of summary judgment in favor of the Bank under counts I through IV; we reverse the court's entry of summary judgment as to those portions of counts V through VII that are directed at Rice and the accounting firm for conduct during the testator's lifetime; we affirm entry of summary judgment as to those portions of counts V through VII that are directed at Rice and the accounting firm for conduct during the administration of the estate; we reverse entry of summary judgment on that portion of count VIII directed at Jennings in his capacity as attorney for the testator; we reverse summary judgment as to count X; we affirm summary judgment as to counts IX and XI and that portion of count VIII directed at Jennings in his capacity as attorney for the estate; we affirm the trial court's denial of the Bank's motion to modify; we affirm the trial court's

denial of summary judgment in favor of plaintiffs; and we remand the case for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part and remanded.

WELCH and CHAPMAN, JJ.,[1] concur.

_____

[1]Justice Goldenhersh participated in oral argument; Justice Chapman was later substituted on the panel.