JANET FINCH, Plaintiff-Appellee, v. ILLINOIS COMMUNITY COLLEGE BOARD, as Administrative Receiver of Metropolitan Community College, Defendant-Appellant.

Fifth District   No. 5—98—0811

Opinion filed July 21, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and A. Benjamin Goldgar, Assistant Attorney General, of counsel), for appellant.

Bernard J. Ysursa, of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

The defendant, Illinois Community College Board (ICCB), as administrative receiver of Metropolitan Community College (Metropolitan), appeals the trial court's grant of a summary judgment to the plaintiff, Janet Finch (Finch), on her complaint for the breach of her employment contract with Metropolitan. On appeal, ICCB contends

that the trial court's grant of summary judgment was erroneous, as there was a genuine issue of material fact as to whether Finch materially breached the employment contract, and alternatively, if Metropolitan breached Finch's employment contract, her damages should be limited, because performance under the contract is impossible. We reverse and remand.

## FACTS

Metropolitan became a community college district pursuant to statute on July 1, 1996. See 110 ILCS 805/2—12.1 (West 1996). On August 1, 1996, Metropolitan's board of trustees entered into an employment contract with Finch. The terms of the contract, which was made retroactive to July 1, 1996, required that Finch fulfill the duties of president of the community college, and in exchange, she would be paid $90,000 per year. The contract's duration was for four years, and article 4 of the contract provided that Finch's employment could be terminated by Metropolitan before the expiration of her contract on June 30, 2000, only if she became mentally or physically disabled. Also under article 4, Finch could terminate the contract by giving Metropolitan 90 days' notice, in writing, prior to June 30 of each year of her contract. Finch's duties were stated in a broad, general manner in the contract and with somewhat more detail in a job description for the position of president, a document incorporated by reference in the employment contract. In the job description the first two duties of the president were listed as follows:

"1. The President is the Chief Executive Officer and educational leader of the college. The President has overall responsibility for the instructional, financial, and student operation functions.

2. Exercises broad discretionary authority consistent with board policies, administrative [sic] procedures, and applicable federal and state mandates."

In addition to the foregoing terms, article 5 of the contract stated as follows:

### "PURCHASE OF REMAINING TERM

Should the Board desire to terminate this Agreement prior to the stated term of this Agreement other than for reasons set forth in Article 4, the Board hereby agrees to cause a purchase of the remaining term of this Agreement. Such purchase price shall be no less than the amount of salary that is owed and would be owed if the President were permitted to serve the entire term of this Agreement. In addition, the President shall be entitled to payment for unused vacation as of the date of termination. Such termination shall be effective upon: 1. the written confirmation of the Board's decision, addressed and delivered to the President; and 2. written agreement of the President, addressed and delivered to the Board."

This provision, which is the subject of this lawsuit, is referred to by the parties as a buyout provision.

In April 1998, ICCB conducted an investigation of Metropolitan because Metropolitan's annual audit for fiscal year 1997, which was due in October 1997, had not been received. Also in April 1998, Metropolitan suspended Finch for a week, with pay. Subsequently, as a result of ICCB's investigation, Metropolitan was placed on "Recognition with Conditions" status by ICCB in May 1998. Under this status, ICCB asserted financial oversight of Metropolitan and required Metropolitan to undertake certain remedial measures.

Finch was suspended again, but without pay, by Metropolitan on August 7, 1998. On August 14, 1998, Finch filed a complaint for the breach of her employment contract and asked for damages under the buyout provision of the contract. In her complaint, Finch asserted that she and Metropolitan entered into a contract on July 1, 1996, and that Metropolitan breached the contract by suspending her without pay, effectively terminating her services in violation of the contract. Finch did not attach a copy of the contract to her complaint, and the only affidavit attached to her complaint was her attorney's affidavit, stating that it was his belief that Finch had suffered damages in excess of $50,000.

Metropolitan filed a motion to dismiss Finch's complaint for breach of contract on September 18, 1998. Metropolitan's motion to dismiss stated several reasons, including that Finch failed to plead the necessary elements for a breach of contract cause of action and that Finch's services were terminated under an "implied just cause termination clause."

On September 24, 1998, Metropolitan terminated Finch's employment. On October 8, 1998, Finch filed a motion for summary judgment. In her motion, Finch asserted that she and Metropolitan entered into a contract and that Metropolitan breached the contract by failing to pay her the remainder of her salary and her unused vacation as of the date of termination pursuant to the buyout provision of the contract. Finch claimed that there were no issues of material fact to be decided and that she was entitled to a summary judgment.

A motion hearing was held on October 28, 1998, wherein Metropolitan's motion to dismiss and Finch's motion for summary judgment were argued. At the motion hearing Metropolitan filed its memorandum in opposition to Finch's motion for summary judgment. Attached to Metropolitan's memorandum were two affidavits from members of Metropolitan's board of trustees. In the affidavits, it was asserted that the grounds for Finch's termination were, among other reasons, as follows:

"(a) General nonfeasance and misfeasance on the part of Dr. Finch with regards to a statutorily required financial audit for the fiscal year 1997, which was due October 15, 1997[,] and not provided, leading to the intervention of the Illinois Community College Board.

(b) Dr. Finch failed to properly report student enrollments for State funding programs.

(c) Dr. Finch failed to develop a financial accounting system which includes trial balances and financial statements that are essential for sound fiscal management of the institution.

(d) Dr. Finch's nonaccounting of inventory."

Metropolitan argued that Finch was required, under article 8 of the employment contract, to comply with State law and with ICCB's rules and regulations. Metropolitan advised the court that Finch failed to establish financial oversight of the college, a critical failure, and that specifically, Metropolitan failed to file an annual audit that was statutorily required. Metropolitan argued in pertinent part as follows:

"Once she [Finch] breaches Article 8, once she breaches the ICCB regulations and state law that was the cause of the financial oversight in position in May of 1998, we're—we have no continuing duty to pay anything. At that point we can terminate.

* * *

If we cannot terminate the CEO of this college for glaring, absolutely incredible financial problems, then *** you've got a public policy question. How can a contract operate as a matter of law to *** keep a CEO in place or to pay her through a termination buyout when, in fact, the audit was a year old, violation of state regulations and state law, when, in fact, there was a seven-hundred-thousand-dollar overcredit of student hours, another violation of state regulations, and when, in fact, the *** audit was continuously delayed, another violation[?]"

On October 29, 1998, the trial court entered an order denying Metropolitan's motion to dismiss and giving Metropolitan seven days to file an answer to Finch's complaint. Metropolitan filed its answer, which included its affirmative defenses, on November 5, 1998. Among Metropolitan's affirmative defenses was that Finch was due no further compensation, including the provisions of the buyout clause, because she breached article 8 of the contract requiring her to comply with the laws of Illinois and with "all relevant policies and resolutions." Metropolitan also asserted as an affirmative defense that it had "just cause" to terminate Finch's services.

In October 1998, ICCB determined that Metropolitan would be dissolved as a community college effective December 31, 1998.

The trial court granted Finch's motion for summary judgment in

a written order entered on November 10, 1998. The court awarded Finch $190,346 in damages, which included a payment for 54 unused vacation days. Metropolitan moved to vacate the summary judgment on November 20, 1998; Finch filed her reply to Metropolitan's affirmative defenses on November 25, 1998; and ICCB petitioned to intervene on November 25, 1998. The trial court denied Metropolitan's motion to vacate and ICCB's petition to intervene. This timely appeal followed.

## ANALYSIS

ICCB contends that the trial court's grant of a summary judgment was erroneous because there is a genuine issue of material fact—whether Finch breached the employment contract and whether Finch's breach was a material breach sufficient to allow Metropolitan to terminate the contract without fulfilling its obligations under the contract, including the buyout provision. ICCB also contends that, even if Metropolitan breached the contract by not paying Finch under the buyout provision, the court's award of damages was erroneous, as after December 31, 1998, Metropolitan was dissolved as a community college. ICCB argues that because Metropolitan was nonexistent after December 1998, Finch's damages should be limited to the payment of her salary and her unused vacation prior to this date, under the doctrine of impossibility.

The disposal of a case by summary judgment is an expeditious procedure; however, it is a drastic measure and should only be allowed where the right of the moving party is clear and free from doubt. See *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750 (1994). In deciding a motion for summary judgment, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. See *Jewish Hospital*, 261 Ill. App. 3d at 754. A plaintiff should present evidence to support every element of the cause of action pled in order to sustain her motion for summary judgment or to resist a defendant's motion for summary judgment. See *Jewish Hospital*, 261 Ill. App. 3d at 755. On appeal, a summary judgment is reviewed *de novo*. See *Jewish Hospital*, 261 Ill. App. 3d at 755. A reviewing court's function is not to resolve disputed factual issues, but it is to determine if disputed factual issues exist. See *Jewish Hospital*, 261 Ill. App. 3d at 755. A reviewing court considers anew the facts, any reasonable inferences to be drawn therefrom, and the law related to a case to determine if the trial court was correct. See *Jewish Hospital*, 261 Ill. App. 3d at 755. If a genuine issue of material fact exists, then the moving party is not entitled to summary judgment as a matter of law and summary judg-

ment must be overturned. See *Jewish Hospital*, 261 Ill. App. 3d at 755.

■ A complaint for the breach of a contract must allege the following elements: the existence of a contract, the plaintiff's performance of all contractual conditions required of her, the defendant's breach of the contract, and the damages that resulted from the breach. See *Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437 (1993). When reviewing a contract, a court must consider the contract as a whole and must determine the intent of the parties. See *Wilson v. Wilson*, 217 Ill. App. 3d 844 (1991). A court will not imply factual conditions that are not expressed in a contract, but a court cannot construe a contract outside the legal conditions underlying a transaction, and existing laws and statues become implied terms of a contract as a matter of law. See *Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank*, 235 Ill. App. 3d 978 (1992).

■ If a party fails to perform his duties under a contract, without a valid excuse, he is liable for a breach of contract, and the remedies for the breach would depend on whether the breach was material or minor. See *Circle Security Agency, Inc. v. Ross*, 107 Ill. App. 3d 195 (1982); Restatement (Second) of Contracts § 241 (1981). If the breach is minor, it is compensable in damages; however, if the breach is material, a nonbreaching party may be excused from its duty of counterperformance. See *Eager v. Berke*, 11 Ill. 2d 50 (1957); *Circle Security Agency, Inc.*, 107 Ill. App. 3d at 202-03; Restatement (Second) of Contracts §§ 231 through 60 (1981).

■ In the case *sub judice*, the trial court found: "[Metropolitan] promised a guaranteed contract to the Plaintiff. *** Guaranteed contracts are valid regardless if the employee is not capable of performing her duties or performs those duties in an unsatisfactory manner." Therefore, the trial court determined that Metropolitan breached its contract and that Finch was entitled to $190,346 in damages. The trial court did not consider whether Finch breached the contract other than to state: "The Court does not doubt that as the president of the college the Plaintiff had a role in the success or failure of the college. *** However[,] the Court's job is to analyze this case under legal principals [*sic*] regardless of how much emotion and truth there is in [Metropolitan's] assertions."

One of the elements of a breach-of-contract lawsuit is that the plaintiff must assert and present some evidence that she fulfilled her obligations under the contract. Finch did not assert in her pleadings that she substantially fulfilled her duties as president, and she never denied Metropolitan's assertions that she breached the contract by failing to fulfill her financial responsibilities for Metropolitan. If we

view Metropolitan's assertions—that Finch failed to file an audit, that she failed to properly report student enrollments, that she failed to implement an accounting system for the college, and that she failed to properly account for Metropolitan's inventory—in the light most favorable to Metropolitan, which is required in reviewing a grant of a summary judgment, then Metropolitan was entitled to present evidence and to establish that these failures were either a material or a minor breach of Finch's contract. If the evidence establishes that Finch's failures were a material breach of the contract, Metropolitan may not be obligated to fulfill its promise under the contract.

The facts asserted through Metropolitan's pleadings and exhibits establish that there is a genuine issue of material fact as to whether Finch materially breached the contract before Metropolitan refused to fulfill its obligations under the contract. Therefore, we reverse the trial court's grant of summary judgment and remand this case for further proceedings. Because we reverse and remand, we need not consider Metropolitan's alternative argument on damages.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of St. Clair County granting summary judgment is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

CHAPMAN and RARICK, JJ., concur.