Kevin E. MINIAT, Plaintiff–Appellant,

v.

ED MINIAT, INC., and South Chicago Packing Co., Defendants–Appellees.

No. 02–1094.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 2002.

Decided Oct. 31, 2002.

Kevin E. Miniat (argued), Miniat & Wilson, Tucson, AZ, for Plaintiff-Appellant.

Brian D. Roche (argued), Sachnoff & Weaver, Chicago, IL, for Defendants-Appellees.

Before FLAUM, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

FLAUM, Chief Judge.

Ed Miniat, Inc., ("EMI") and South Chicago Packing Co. ("SCPC") are family-owned businesses specializing in meat-processing and distribution. In this diversity suit, Kevin Miniat ("Kevin"), a shareholder in both EMI and SCPC, seeks a declaratory judgment announcing the invalidity of elections held in 2000 to select the compa-nies' respective boards of directors. The district court granted summary judgment for the defendants, and Kevin appeals. We affirm.

## I. BACKGROUND

Edmund Miniat, Sr., and his sons Ronald Miniat ("Ron") and Edmund Miniat, Jr., ("Ed Jr.") formed EMI in 1958 and acquired SCPC in 1972. In 1994 Ron and Ed Jr. became sole and equal shareholders of both companies. They later gave 6.5% of the shares to Ron's son David Miniat ("David"), the companies' president.

In 1996 Ron, Ed Jr., and David entered into agreements that imposed restrictions on the voting of EMI and SCPC shares. One of the express purposes of these shareholder agreements was to "maintain continuity in the management, policies, ownership and control of the Corporation." To this end Section 2.3.1(ii) of the agreements [1] provides:

> A Shareholder ... hereby agrees to vote his Shares in favor of ... the election of a Board comprised of a majority of "involved directors," which shall include the President of the Corporation and which may include other management employees having significant business and management expertise deemed uniquely valuable to the Corporation's business (which for purposes hereof shall be deemed to include Edmund M. Miniat, Jr. and Ronald M. Miniat).

After the shareholder agreements were executed, Ed Jr. gifted all of his shares in equal amounts to his two daughters and his son Kevin (the plaintiff in this case). Kevin and his sisters then signed an adoption agreement binding them to the terms of the shareholder agreements.

In April 2000 a shareholders' meeting was held to elect SCPC's board of di-

---

1. The provision is identical in both agree-ments.

rectors. At Kevin's insistence the vote was originally taken without the use of a preprinted ballot. SCPC declared this first vote invalid under Section 2.3.1(ii), however, because it did not result in the election of David, the President. A second vote was therefore conducted using a preprinted ballot prepared by SCPC's counsel, Sachnoff & Weaver, Ltd. ("Sachnoff"). The ballot contained the following instructions:

> Shareholder must cast one-sixth (1/6) of his votes ... for the President of the Corporation, David J. Miniat. Shareholder must cast at least one-half (1/2) of his votes ... for candidates who qualify as "involved directors." "Involved director" means a management employee having significant business and management expertise deemed uniquely valuable to the Corporation's business. "Involved directors" include Edmund M. Miniat, Jr. and Ronald M. Miniat. Shareholder may cast his remaining votes for any one or more candidates.

The second vote resulted in the election of David and three other "involved directors," including Ron and Ed Jr.

Later the same day, a shareholders' meeting was held to elect EMI's board of directors. This time Kevin objected to the use of the preprinted ballot and specifically to the provision requiring shareholders to cast 1/6 of their votes for the President. In response EMI agreed to postpone the vote pending an interpretation of Section 2.3.1(ii) by EMI's counsel, Sachnoff. Sachnoff's opinion later corroborated EMI's and SCPC's construction of Section 2.3.1(ii)—namely, that it requires each shareholder to cast his or her votes in a manner that ensures that the resulting board is comprised of a majority of "involved directors," including the President.

Another meeting was held in June 2000 to elect EMI's board. All of the shareholders, including Kevin, used the pre-printed ballots prepared by Sachnoff. The vote resulted in the election of David and three other "involved directors," including Ron and Ed Jr., and was declared valid.

In March 2001 Kevin filed suit against SCPC and EMI, seeking a declaratory judgment that the first SCPC vote was valid and that the second SCPC vote and the EMI vote were both invalid. He asserted that Section 2.3.1(ii) of the shareholder agreements was void for indefiniteness and that the elections should have been governed by the Illinois Business Corporation Act, 805 Ill. Comp. Stat. 5/7.40. In the alternative he claimed that Section 2.3.1(ii) does not require the shareholders to vote for the President, nor does it require a majority of "involved directors" to be actually elected. On cross-motions for summary judgment, the district court held that Kevin's interpretation of the voting provision "flies in the face of logic and reason" and thus granted the defendants' motion. Kevin then moved for reconsideration, asking the court to consider among other things his argument that the preprinted ballots improperly defined "involved directors" to mean *only* management employees. The court denied Kevin's motion, and this appeal followed.

## II. DISCUSSION

We review a lower court's grant of summary judgment *de novo*. *Lim v. Tr. of Ind. Univ.*, 297 F.3d 575, 580 (7th Cir. 2002). Because this is a diversity case, Illinois law governs all substantive issues. *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir.2002).

The central issue on appeal is whether Section 2.3.1(ii) requires shareholders to cast their votes so that the resulting board is comprised of a majority of "involved directors," including the President. Kevin contends that the provision should not be interpreted in this manner for two reasons.

First, he maintains that the phrase "which shall include the President of the Corporation and which may include other management employees" modifies "involved directors," rather than "majority." Second, he claims that Section 2.3.1(ii) is satisfied so long as every shareholder votes in favor of a majority of "involved directors," regardless whether a majority is actually elected. We reject both of his arguments.

Kevin urges this court to read the phrase "which shall include the President of the Corporation and which may include other management employees" as modifying "involved directors" instead of "majority." Thus, according to his construction, Section 2.3.1(ii) includes the President, along with other qualified management employees, in the class of "involved directors" but does not require that he be on the majority elected to the board. We agree with the district court that Kevin's interpretation contorts the clear meaning of the voting provision. First, his construction is inconsistent with the contract as a whole, which Illinois law requires us to consider to determine the intent of the drafters. *Finch v. Ill. Cmty. Coll. Bd.*, 315 Ill.App.3d 831, 248 Ill.Dec. 398, 734 N.E.2d 106, 110 (2000). When terms are defined elsewhere in the shareholder agreements, the drafters used the language "shall mean" or "means and includes." Thus, if the intent of the phrase "which shall include the President ..." was to define "involved directors," then it logically would have led off with similar language. Kevin, however, asserts that the drafters did not intend to limit the class of "involved directors" to management employees, which, he says, explains the use of the term "include." But then the qualifying phrase would simply have read "which shall include the President and other management employees." Kevin's approach would render the language "which may include" unnecessary, and Illinois law requires that we give effect to all contract terms to avoid such a result. *Horwitz v. Bankers Life and Casualty Co.*, 319 Ill.App.3d 390, 253 Ill.Dec. 468, 745 N.E.2d 591, 607 (2001).

Contrary to Kevin's argument, Section 2.3.1(ii) only makes sense if we read the qualifying phrase as referring to the make-up of the "majority"; the juxtaposition of "which shall include the President" and "which may include other management employees" supports this interpretation. Thus, properly construed, Section 2.3.1(ii) requires shareholders to vote their shares so that a majority of "involved directors," including the President, is on the resulting board. This is the only logical reading of the provision.

Kevin tries to get around this result by invoking the "last antecedent" rule, which provides that generally in the construction of written instruments a qualifying phrase is to be confined to the last antecedent. *Advincula v. United Blood Serv.*, 176 Ill.2d 1, 223 Ill.Dec. 1, 678 N.E.2d 1009, 1022 (1996). "Last antecedent," however, is defined as the "last word, phrase or clause that can be made an antecedent *without impairing the meaning of the sentence." Id.* (emphasis added). As explained above the last phrase that can be made an antecedent without contorting the meaning of Section 2.3.1(ii) is "majority of involved directors." Kevin also asserts that the quotation marks around "involved directors" indicate that that term has special meaning, whereas "majority" does not require any definition in context. But this approach is inconsistent with the contract as a whole. *See Finch*, 248 Ill.Dec. 398, 734 N.E.2d at 110. First of all, there are other terms in the agreements that are set off in quotes but are not defined. Further, all the defined terms in the agreements are not only set off in quotes but also appear in bold typeface. "Involved directors," however, is in

plain typeface, indicating that it is not, as Kevin would have us believe, a defined term.

■ We also reject Kevin's second argument that Section 2.3.1(ii) is satisfied so long as every shareholder votes for a majority of "involved directors," regardless whether a majority is actually elected. As we have already said, when construing a contract, meaning should be given to every term if at all possible. *Horwitz*, 253 Ill. Dec. 468, 745 N.E.2d at 607. Kevin's interpretation of Section 2.3.1(ii) contravenes this well-established rule because it renders the word "election" superfluous. The section would then simply have read: "A Shareholder ... hereby agrees to vote his Shares in favor of a Board comprised of a majority of 'involved directors.' " But this is not what Section 2.3.1(ii) says; the plain language contemplates the *"election* of a Board comprised of a majority of 'involved directors.' " Kevin has provided no good reason why we should read the term "election" out of the contract, and so we decline to do so.

■ Kevin's interpretation of Section 2.3.1(ii) is incorrect, but he also raises the alternative argument that the provision is void for indefiniteness. Specifically, he contends that the term "involved directors" is indefinite because the language "management employees having significant business and management expertise deemed uniquely valuable" inadequately defines the criteria for inclusion in the group. We disagree. In Illinois a contract is deemed sufficiently definite "if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill.2d 306,

113 Ill.Dec. 252, 515 N.E.2d 61, 65 (1987) (internal quotations omitted). Here it is clear what Section 2.3.1(ii) requires shareholders to do—vote their shares in order to elect a majority of qualified management employees, including the President— and so it is not unenforceable for indefiniteness. Relevant to this analysis is the fact that Kevin does not even contend that any of the "involved directors" elected in 2000 were not qualified under the section.[2] Illinois law does not allow for us to consider in the abstract who else may or may not qualify. *Gale v. York Ctr. Cmty. Coop., Inc.*, 21 Ill.2d 86, 171 N.E.2d 30, 34 (1960) (finding contract enforceable because court was able to ascertain from its terms what parties agreed to do and holding that it was "not necessary or proper to construe in abstraction the terms of the agreement the plaintiffs assail"); *accord Midland Hotel*, 113 Ill.Dec. 252, 515 N.E.2d at 65. If the boundaries of the "involved directors" class are ever called into question, we are confident that Section 2.3.1(ii) is sufficiently definite to allow the courts then to make that determination. *See Gale*, 171 N.E.2d at 34.

■ Finally, Kevin maintains that the preprinted ballot used in the 2000 elections improperly defined "involved directors" to mean *only* management employees. Pointing to the language "which *may* include other management employees" in Section 2.3.1(ii), Kevin asserts that the ballot converted the permissive inclusion of management employees into a mandatory restriction. The district court agreed, holding that the ballot incorrectly limited "involved directors" to management employees, but ultimately considered the error unimportant. We also conclude that Kevin's argument should fail but for a

2. Those four "involved directors" were David, Ron, Ed Jr., and John Molton. Molton had served as the Controller of both companies since 1981 and was elected Secretary and Treasurer in 1995.

different reason: Section 2.3.1(ii) *does* restrict the class of "involved directors" to management employees. If the phrase "which may include" modifies "majority" and not "involved directors" (which we have already determined that it does), the use of the permissive "may" means only that, once the shareholder has cast the requisite number of votes for the President, he or she has the discretion to vote for anyone else in the class of qualified management personnel. In other words the majority "shall" include the President and "may" include a given management employee. All of the "involved directors," however, must be "management employees having significant business and management expertise deemed uniquely valuable to the Corporation's business." Otherwise, if we adopt Kevin's approach, Section 2.3.1(ii) would give no indication who, other than the President, is included in the class of "involved directors."

### III.  CONCLUSION

In sum we conclude that the proper construction of Section 2.3.1(ii) is as follows: The shareholders of each corporation must vote their shares so that the resulting board is comprised of a majority of "involved directors." The President must be part of the majority; the remaining members may be selected from other "management employees having significant business and management expertise deemed uniquely valuable to the Corporation's business," which includes Ronald Miniat and Edmund Miniat, Jr. The elections challenged by Kevin Miniat complied with this interpretation of Section 2.3.1(ii), and so the judgment of the district court is AF-FIRMED.