NOTICE

Decision filed 06/10/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190294-U

NO. 5-19-0294

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE CITY OF RED BUD, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Randolph County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-LM-122 |
| MELISSA STINES, MATTHEW STINES, ROGER HESS, M&M STINES, LLC, an Illinois Limited Liability Company, and RTR HESS COMPANY, LLC, an Illinois Limited Liability Company, all d/b/a The Office Bar & Grill, | ) ) ) ) ) ) | |
| | ) | Honorable |
| | ) | Julia R. Gomric, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Welch and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in entering judgment in favor of the defendants on the City of Red Bud's claim for breach of contract.

¶ 2    The plaintiff, the City of Red Bud (Red Bud), appeals the trial court's entry of judgment in favor of the defendants, Melissa Stines, Matthew Stines, Roger Hess, M&M Stines, LLC, an Illinois limited liability company, and RTR Hess Company, LLC, an Illinois limited liability company, all doing business as The Office Bar & Grill (The

1

Office), on Red Bud's complaint for breach of contract and *quantum meruit*. On appeal, Red Bud contends the trial court erred in finding Red Bud failed to prove its breach of contract claim. We reverse and remand.

¶ 3                                   BACKGROUND

¶ 4       Red Bud, a municipal corporation, owns and operates its own public utility systems, providing water, sewer, electrical, and natural gas utility services to its residents and businesses. Red Bud manages approximately 1700 natural gas accounts and employs workers to provide operational, maintenance, and technical services for the natural gas utility system. The Office is owned and operated by M&M Stines, LLC, and RTR Hess Company, LLC, pursuant to the terms of a limited partnership agreement. Melissa Stines and Matthew Stines are partners in M&M Stines, LLC. Roger Hess is the sole principal of RTR Hess Company, LLC.

¶ 5       Prior to its opening on August 3, 2009, Melissa Stines, in her capacity as part-owner and manager of The Office, went to Red Bud's city hall and completed an application for natural gas service on behalf of the business. The completed application was then faxed to the city's utility department, where a clerk entered a work order for the installation of the new gas meter to be installed at the restaurant. In December 2009, the utility department installed the new meter. On December 30, 2009, the utility department performed a second gas safety check on the gas meter at The Office. The December 30, 2009, work order indicates the initial reading for new gas meter was 12. The utility department sent a copy of the December 30, 2009, work order to city hall that day.

2

¶ 6    Usually, upon receipt of a completed work order from the utility department, the clerk at city hall enters the account information into the city's computer system. The information is then downloaded from the computer on to the handheld devices used by the city's meter readers who are responsible for recording each client's monthly gas usage. In this case, the account information for The Office was inadvertently not entered into the computer system. As a result, no monthly meter reading was downloaded, and no monthly bill was generated for The Office's natural gas usage. The City of Redbud did not discover the error for approximately seven years.

¶ 7    In January 2017, one of the city's meter readers advised Josh Eckart (Eckart), Red Bud's city superintendent, that the gas meter for The Office was not in the handheld meter-reading device. Eckart contacted the utility billing clerk at city hall and verified that The Office's gas meter was not in the system. Eckart advised Timothy Lowry (Lowry), the mayor of Red Bud, of this issue.

¶ 8    Lowry instructed Eckart to estimate the charges for The Office's natural gas usage over the period of usage, prior to the discovery that the meter had not been inspected.  In January 2017, Eckart went to The Office and took a meter reading, registering 44,135 units,[1] or 4,412,300 cubic feet of total gas usage since the first reading on December 30, 2009. The price of natural gas changes monthly, so Eckart researched the past billing rates

---

[1]Eckart's testimony regarding the units of measurement conflicted with the documentary evidence presented at trial. For example, Eckart testified that a unit, as measured by the gas meter, was equal to an "MCF" or a "million cubic feet." Eckart's testimony that an "MCF" is equal to a "million cubic feet" is incorrect. "Mcf" as a measurement of volume is equal to 1000 cubic feet. Furthermore, the exhibits suggest that the gas meter measured in volumes of 100 cubic feet. For the purposes of clarity, in this order, we have used the correct units of measurement, as reflected in the documentary evidence.

for the city. Eckart calculated that the average price over the relevant period, including the fixed maintenance fee charged by the city, which was $6.73 per thousand cubic feet. Based on The Office's usage between the initial reading of the meter in December 2009 and the second reading in January 2017, Red Bud estimated that the average cost of the gas used by The Office was $29,712.43. Lowry contacted Melissa to inform her of the problem and to discuss solutions. The parties attempted to negotiate a settlement but were unsuccessful.

¶ 9 On January 24, 2018, Red Bud filed its amended complaint against the defendants alleging breach of contract and *quantum meruit*. Red Bud alleged the application for natural gas service completed by Melissa, along with the city ordinances, constituted a valid, binding contract. The application for gas service included the following provisions:

"As an inducement of the City of Red Bud to accept this application, the applicant:

1. Agrees to pay for all gas used on said premises at the rates provided by the ordinances of the City.

2. Agrees to abide by all applicable ordinances, rules and regulations of the City, all of which are available at City Hall.

3. Hereby grants an easement over said premises in favor of the City of Red Bud, IL for the purpose of laying, maintaining, metering, repairing and replacing the natural gas line servicing the premises ***.

***

Applicant understands and agrees that upon installation of the service by the city, this application and all of its terms and conditions constitute a contract by and between the applicant and the city of Red Bud."

¶ 10 City Ordinance 38-2-1, titled "Contract for Utility Services," provides in relevant part:

4

"(A) Customer Accepts Service. The rates, rules and regulations contained in this Chapter shall constitute and be considered a part of the contract with every person, company, corporation or entity who is (1) an applicant for any lot, parcel of land or premises receiving utility services ***. Each and every customer shall be held to have consented to be bound by all terms and conditions of this Chapter. ***

* * *

(F) Failure to Receive Bill. Failure to receive a bill shall not excuse a customer from his obligation to pay within the time specified. Should the Department be unable to bill a customer for services used during any month, the next billing shall include the charges for services used during the unbilled month. A month shall be considered as that period of approximately thirty (30) days.

***

(H) Billing Procedure.

(1) Procedure and Late Charges. All utility bills shall be rendered by the sixteenth (16th) day of each month at net through the last day of the month that billing was made. ***

***

(2) Late Billing Dates. Should the rendering of the monthly utility bills be delayed beyond the sixteenth (16th) day of a single month, the time of such delay shall be added to the normal time for the net payment of bills and before the time of the provisions for penalty and disconnection shall commence.

* * *

(K) Liability for Charges. The applicant for any lot, parcel of land or premises receiving Utilities Services, the occupant of such premises and the user of the services shall be jointly and severally liable for the payment of the services to such lot, parcel of land or premises and all services are rendered to the premises by the City only on the condition that such applicant, occupant and user shall be jointly and severally liable therefor to the City.

(L) Inoperable Meter; Estimated Charges. Whenever any utility meter, by reason of its being out of repair or from any cause, fails to properly register the utility consumption passing through the same, the consumer shall be charged an amount based upon previous billings amended to current conditions when such

5

information is available. If no record of previous billing exists, then it shall be the duty of the City Collector to estimate the amount of utilities consumed during the time the meter fails to operate, and the consumer shall be charged the estimated amount."

¶ 11   Ordinance 38-2-2, titled "No Free Service; Special Rates," provides as follows:

"No free utility services shall be furnished to any person, firm or corporation. All rates and charges shall be non-discriminatory; provided, however, the City Council reserves the right to impose special rates and charges in cases where particular circumstances render the established rates inadequate or unjust. ***"

¶ 12   On May 21, 2019, the trial court conducted a bench trial. Red Bud introduced into evidence the cost of a unit of natural gas, both with and without the applicable taxes and fixed maintenance fees, for every month between January 2010 and January 2017. The evidence indicated that the average cost of gas, with maintenance fees, was $6.73 per thousand cubic feet. Eckart testified that assuming an average monthly usage over the period in question, the cost of the gas, with taxes, equaled $30,967.42. Eckart stated the lowest monthly price for gas, including the maintenance fee, during the seven-year period was $4.71. Eckart testified that the absolute lowest possible cost for the gas used by the defendants was $21,840.89, with the maintenance fees and taxes included. Eckart further testified that The Office has been billed for its gas usage every month since the January 2017 discovery.

¶ 13   At trial, Melissa testified she was the manager of The Office, and that she ran the day-to-day operations of the business. Melissa stated she received and paid the monthly utility bills from the city, but that she never noticed that The Office was not being billed for gas. Melissa acknowledged that The Office consumed natural gas between January

2010 and January 2017, and that The Office owed Red Bud something for the gas it used.

During cross-examination, Melissa testified as follows:

> "Q. Okay. So you don't deny that the Office Bar & Grill consumed the city utilities natural gas from the time of early 2010 until the early part of '17, right?
> A. Of course not.
>
> Q. Okay. Obviously, you don't—do you believe you owe the money to the City for the gas?
> A. I do believe I owe some money to the City, absolutely.
>
> Q. Okay. You just never received a bill or an amount; is that right?
> A. Correct.
>
> Q. Okay. So the question is not whether you owe the City, it's how much you owe the City?
> A. Correct."

¶ 14 On June 18, 2019, the trial court entered an order finding in favor of the defendants, and against Red Bud. The court found that Red Bud established that a valid contract existed between the parties wherein gas would be supplied by the city to the defendants "pursuant to the terms contained" in the application and the municipal ordinances. The court found, however, that the city did not perform under the contract because it failed to bill the defendants as required by the city ordinances. The trial court concluded because of the city's failure to bill the defendants, the city could not prove that the defendants breached their contractual duty to pay after being billed for their usage. The court also found that the city could not prove its damages because the city could not establish the date it discovered its failure to bill the defendants, or how much natural gas was used by the defendants in each month over the period of years the city failed to bill, so that the appropriate monthly rate for gas could be applied. Finally, the court found Red Bud's *quantum meruit* claim

7

failed because the parties had a valid written contract for the supply of natural gas. This appeal follows.

¶ 15                                    ANALYSIS

¶ 16    This court will not reverse the trial court's judgment, after a bench trial, unless the judgment was against the manifest weight of the evidence. *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 25. A judgment is against the manifest weight of the evidence when the judgment is arbitrary, unreasonable, not based on evidence, or the opposite conclusion is apparent. *Sharif*, 2014 IL App (1st) 133008, ¶ 25. We defer to the trial court's factual findings due to that court's familiarity with the evidence and superior position to observe the conduct and demeanor of the witnesses. *In re D.F.*, 201 Ill. 2d 476, 498-99 (2002). This court cannot substitute its judgment for that of the trial court regarding the credibility of the witnesses, the weight to be given to the evidence, or the inferences to drawn from the evidence. *In re D.F.*, 201 Ill. 2d at 499.

¶ 17    On appeal, Red Bud argues the trial court erred in finding the defendants were not liable for breach of contract due to Red Bud's failure to bill the defendants pursuant to the terms of the contract and the city's ordinances. To sustain a claim for breach of contract, the plaintiff must establish (1) the existence of a contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) injury to the plaintiff. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 600 (2005). Here, the trial court found there was a valid contract between the parties, but that Red Bud failed to prove the remaining elements of its breach of contract claim. We will address each element in turn.

8

¶ 18                          Existence of a Contract

¶ 19    There is no dispute that the parties entered into a valid, enforceable contract when Melissa completed the application for natural gas service with the city. Therefore, Red Bud has satisfied the first element.

¶ 20                          Performance by Red Bud

¶ 21    In concluding that Red Bud failed to perform under the contract, the trial court made several findings, including (1) that Red Bud has never "billed" the defendants for the gas consumed by them as required by the city's ordinances, and (2) that Red Bud's billing of the defendants pursuant to the terms of the contract was "necessary" to Red Bud's performance under the contract. The trial court also found that as a result of Red Bud's failure to bill the defendants, Red Bud could not prove the defendants breached the contract by failing to pay for the gas, once being informed of the amount due. Although not explicitly stated by the court, it appears that the trial court's judgment was based upon a finding that Red Bud's failure to bill the defendants pursuant to the city's ordinances constituted a material breach of the contract.

¶ 22    Generally, when a party fails to perform his duties under a contract, he is liable for breach of contract. *Finch v. Illinois Community College Board*, 315 Ill. App. 3d 831, 836 (2000). The remedies available for the breach depend on whether the breach was minor or material. *Finch*, 315 Ill. App. 3d at 836. While a minor breach is compensable in damages, a material breach of a contract provision may be grounds for releasing the nonbreaching party from his contractual obligations. *Finch*, 315 Ill. App. 3d at 836.

9

¶ 23   "[A] breach is material when it is fundamental or defeats the purpose of the contract." *Commonwealth Edison Co. v. Elston Avenue Properties, LLC*, 2017 IL App (1st) 153228, ¶ 18. Whether a breach is material is question of fact, and looks to "whether the breach worked to defeat the bargained-for objective of the parties or caused disproportionate prejudice to the non-breaching party, whether custom and usage considers such a breach to be material, and whether the allowance of reciprocal non-performance by the non-breaching party will result in his accrual of an unreasonable or unfair advantage." (Internal quotation marks omitted.) *Commonwealth Edison Co.*, 2017 IL App (1st) 153228, ¶ 18 (quoting *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346-47 (2005)). The court should consider several factors when determining whether a breach is material. These factors include (1) the extent to which the injured party will be deprived of the benefit he reasonably expected; (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (3) the extent to which the party failing to perform will suffer forfeiture; (4) the likelihood that the party failing to perform will cure his failure; and (5) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. *Commonwealth Edison Co.*, 2017 IL App (1st) 153228, ¶ 19.

¶ 24   On review, we will not disturb the trial court's determination as to whether the breach was material unless the determination was against the manifest weight of the evidence. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 72 (2006). When reviewing the contract, the court must consider the contract as a whole and determine the intent of the parties. *Finch*, 315 Ill. App. 3d at 836.

10

¶ 25    Again, the parties do not dispute that the city's ordinances were included as terms of the contract, and that the city failed to record and bill The Office for its monthly gas usage between January 2010 and January 2017, as required by the ordinances. There is no doubt that Red Bud failed to strictly perform under the terms of the contract. The question though is whether Red Bud's failure to read the gas meter, and to bill the defendants every month, was a material breach of the contract which absolved the defendants of their obligation to counter-perform by making payment. Applying the relevant factors, we find that Red Bud did not materially breach the contract.

¶ 26    Reviewing the contract as a whole, the clear intent of the parties was to contract for natural gas service, wherein Red Bud would supply natural gas to the defendants and the defendants would pay for the gas consumed by The Office. Under the contract, the price of the gas was not fixed, but fluctuated per month, based on market rates plus certain fees and taxes. While the contract's billing and payment terms served important functions, such as establishing the amount and timing of payments, and the consequences for when a customer did not make timely payments, nothing in the contract explicitly relieved a customer of his obligation to pay, in the event Red Bud failed to bill the customer pursuant to the terms of the contract.[2] While Red Bud's failure to perform some of its duties under

---

[2]Instead, the first sentence of municipal ordinance 38-2-1(F) explicitly provides that the failure to receive a bill does not excuse a customer from his obligation to pay. The second sentence of subsection (F), addressing situations when the city is "unable" to bill a customer for services used during any month, is not applicable in this case. While the city did not bill the defendants, there is no evidence in the record that the city was "unable" to bill the defendants. Whatever circumstances this provision may have contemplated, they are not currently before this court. Furthermore, ordinance 38-2-1(L), relating to the procedure to be implemented to estimate charges when the gas meter is "inoperable," is also inapplicable in this case. Again, although the city did not read the meter, there is no evidence suggesting the meter was inoperable.

the contract may affect its ability to prove the full extent of its damages, the trial court's finding that the city materially breached the contract was against the manifest weight of the evidence.

¶ 27 There is no dispute that Red Bud supplied the defendants with all of the natural gas the defendants required, and that it did so in a safe and reliable manner. Red Bud installed the necessary equipment to supply the gas, and performed numerous maintenance and safety checks on the meter over the years. Allowing the defendants to retain all of the bargained-for goods and services provided by Red Bud, without any compensation in return, would needlessly frustrate the purpose of the contract and would result in the defendants' accrual of an unreasonable and unfair benefit. Furthermore, the evidence indicates that Red Bud's breach was the result of an honest mistake, and there is no allegation that the city violated the standards of good faith and fair dealing.

¶ 28 Based on the foregoing, we find that Red Bud substantially performed its obligations under the contract and did not materially breach the contract. Red Bud has satisfied the second element of its breach of contract claim.

¶ 29                           Breach by the Defendants

¶ 30 Again, there is no dispute that the defendants have not paid Red Bud for any of the 4,412,300 cubic feet of natural gas they used between the initial meter reading on December 30, 2009, and the second reading in January 2017. The defendants' failure to pay is a breach of their obligations under the contract, and satisfies the third element of Red Bud's claim.

12

¶ 31                              Injury to the Plaintiff

¶ 32    After discovering the error, Eckart took a meter reading and calculated the total amount of gas consumed by The Office during the seven-year period of nonbilling. Although much has been made of the fact that at trial, Red Bud could not pinpoint the exact dates of the discovery of the error, or of the second meter reading, these dates are inconsequential. The only issue in this case is the amount due for the 4,412,300 cubic feet of natural gas delivered to The Office between the first and second meter readings. Whether the second reading occurred on one specific date in January 2017, versus another date in January 2017, has no bearing on the damages calculation, as there is no evidence that Red Bud is attempting to double bill The Office for the same gas usage.

¶ 33    While the amount of natural gas delivered to the defendants is certain, the price per unit is not because of the fluctuating market prices and Red Bud's failure to strictly comply with the contract by recording and billing the defendants for their monthly gas usage. Uncertainty as to price may affect Red Bud's ability to prove the precise amount of its damages, but it does not diminish the fact that Red Bed has established that it was injured by the defendants' breach for failure to pay.

¶ 34    A plaintiff must prove damages to a reasonable degree of certainty. *Beasley v. Pelmore*, 259 Ill. App. 3d 513, 523 (1994). Although the plaintiff need not prove the exact amount of his loss, he must present evidence providing a basis for assessing damages with a fair degree of probability. *Beasley*, 259 Ill. App. 3d at 523. The proper measure of damages for a breach of contract is the amount necessary to place the plaintiff in the same,

13

and no better, position had the breaching party performed under the contract. *In re Illinois Bell Telephone Link-Up II & Late Charge Litigation*, 2013 IL App (1st) 113349, ¶ 19.

¶ 35 Even though the amount of damages was the primary issue before the trial court, that court did not make any findings as to the appropriate price for each unit of gas delivered to the defendants. On appeal, Red Bud requests this court hold that Red Bud is entitled to recover damages based upon the average monthly cost of the gas for the unbilled time period. We decline to do so. An abundance of evidence was presented by the parties during trial regarding their competing theories as to the proper measure for calculating damages. The trial court is in the best position to assess that evidence, and did not have the opportunity to make any decisions related to this issue. Therefore, we remand the cause to the trial court for a determination as to the amount of damages owed by the defendants to the city of Red Bud.

¶ 36 Based on the foregoing, we reverse the trial court's judgment in favor of the defendants on Red Bud's breach of contract claim and remand this cause to the trial court for a determination on damages.


¶ 37 Reversed and remanded.