**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180496-U

Order filed January 8, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* ESTATE OF ANTHONY J. IMBURGIA, Deceased | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Iroquois County, Illinois. |
| (Michael D. Imburgia, | ) ) | |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0496 Circuit No. 13-P-27 |
| | ) | |
| Michael J. Imburgia, Executor of the Estate of Anthony J. Imburgia, Deceased | ) ) ) | Honorable James B. Kinzer, |
| Respondent-Appellee.) | ) | Judge, Presiding. |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  A trial court order overruling a beneficiary's objections to a final report and accounting of a decedent's estate was affirmed as not against the manifest weight of the evidence when the executor reasonably relied upon the opinions of advisors in managing a large, complex estate.

¶ 2    A beneficiary under a decedent's will appealed a trial court order denying his objections

to the final report of the decedent's estate filed by the executor of the decedent's will.

¶ 3                                    FACTS

¶ 4        The decedent, Anthony J. Imburgia, died on February 20, 2013. His will, dated October 29, 2007, along with a holographic codicil dated February 19, 2013, was admitted to probate on March 12, 2013. The decedent's son, Michael J. Imburgia, the appellee, was appointed executor in accordance with the terms of the will. The estate was converted to a supervised estate on February 3, 2016. On October 5, 2017, the executor filed a final amended accounting. The appellant, Michael D. Imburgia, the decedent's grandson and a residuary beneficiary under the will (the beneficiary), filed objections to the final report. The trial court struck some of the issues raised by the objections and granted the executor's motion *in limine* that limited the trial to evidence regarding five remaining issues in dispute: the executor's actions relating to the loans to and sale of Valley Farms; the reasonableness of the attorney fees and whether the lump-sum payment contributed to waste from not timely paying federal estate taxes; whether the executor should have filed a legal malpractice claim; the decedent's alleged interest in the Shewami Golf Course; and whether the executor failed to account for the decedent's professional sports' season tickets.

¶ 5        At the bench trial, after the beneficiary rested, the executor moved for a directed finding as to all five issues pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2016)). The trial court directed findings as to the issues involving the attorney fees, the Shewami lot, and the sports' tickets. After proceeding on the remaining issues, including the issue of whether the accounting was full and complete with respect to the sale of a condominium, the trial court entered an order overruling the objections with prejudice and approving the final amended accounting. The executor sought a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal. The trial

court entered that finding on July 31, 2018. In that same order, the trial court granted motions to approve final attorney fees, approve expert witness fees, and approve the final plan of distribution. The beneficiary appealed.

¶ 6                                                            ANALYSIS

¶ 7        The beneficiary argues that the executor mismanaged the estate on several occasions, resulting in damages to the beneficiary. The beneficiary contends that the trial court's overruling of his objections and approval of the final accounting was contrary to the manifest weight of the evidence. Conversely, the executor contends that he satisfied his fiduciary duty to the estate, relying on the advice of experts, attorneys, accountants, and advisors in doing so.

¶ 8        An executor is the person named by a testator to carry out the provisions of the testator's will. *In re Estate of Talty*, 376 Ill. App. 3d 1082, 1089 (2007). The executor owes a fiduciary duty to the testator's estate to act with the highest degree or fidelity and good faith. *Id.* The executor, though, is only required to act with the skill and diligence that he applies to his personal business. *Jewish Hospitals of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 768 (1994). The executor has a right to hire experts or consultants for advice and can rely on that advice, if the executor has no reason to know that the advisor is incompetent or the advice unsound. See *id.* (A bank had a right to hire an attorney to handle the legal affairs of the estate and to rely on the advice).

¶ 9        We will reverse a trial court's ruling on a motion for a directed finding only if it is contrary to the manifest weight of the evidence. *Cooke v. Maxum Sports Bar & Grill, Ltd.*, 2018 IL App (2d) 170249, ¶ 82. We apply the same standard to a trial court's ruling following a bench trial. *In re Marriage of Kendra*, 351 Ill. App. 3d 826, 829 (2004). Any evidentiary errors are reviewed for an abuse of discretion. *Jackson ex rel. Jackson v. Reid*, 402 Ill. App. 3d 215, 235 (2010). We

find that the trial court's overruling of the beneficiary's objections and approval of the accounting was not contrary to the manifest weight of the evidence, as individually addressed below.

¶ 10                              A. Loans to Valley Farms

¶ 11        The beneficiary argues that the executor mismanaged the sale of the apple orchard owned by the estate, Valley Farms. The beneficiary contends that the executor made excessive unsecured loans to Valley Farms, for a total of about $2 million, during the time period that the executor claimed that the estate lacked financial funding to pay $1.9 million in federal estate taxes and thus incurred penalties and interest. The beneficiary contends that the executor did not liquidate Valley Farms as soon as reasonably possible. The executor contends that he acted on the advice of the estate's attorney and accountant, and two other consultants, and determined that the best course of action was to farm the orchard until a buyer could be found.

¶ 12        Valley Farms was an apple orchard located in Arizona owned by the decedent. The executor testified that the decedent died right before the farming season for apples began in 2013, so the executor contacted the decedent's accountant, the estate's attorney, and two consultants to decide the best course of action. The first consultant was Jim Afinowich, a man hired by the decedent prior to his death to sell Valley Farms. The executor retained Afinowich to complete the sale of Valley Farms. The executor asked Afinowich to provide an analysis of the property. Based on Afinowich's report, the executor understood that Valley Farms was worth much more as an operating farm than as raw land and that the executor needed to maintain its condition as a farm in order to find a buyer who had an interest in farming. Apple trees would be lost if apples were not grown for the season. The executor testified that Afinowich was trying to sell the apple orchard, but the executor continued to farm the land until a buyer could be found based on Afinowich's recommendation. Afinowich recommended the second consultant, Christianne Carin, who was

4

hired to value the property but was also hired to run the farm and prepare it for sale. Carin's report dated July 11, 2013, valued the property between $1.5 and $1.9 million, plus the value of the crop. The executor testified that the raw land would have been worth $700,000 to $750,000.

¶ 13 Based on the recommendations of Afinowich and Carin, the executor believed that the property would be worth more as a farming operation than as raw land. Thus, the executor determined that it was in the best interest of the estate to proceed with farming until it could be sold. That included making loans to Valley Farms to continue the operations until it sold. Valley Farms was ultimately sold for $2.4 million in December 2014, with an additional $1.1 million for the crop. The net cash to the estate was $735,535.34.

¶ 14 The trial court found that there was no waste or mismanagement by the executor; he relied on expert advice in determining that the best course of action was to continue to farm the property until it was sold, which required loans to meet the operating costs. While circumstances indicate that attempting to sell the farm as raw land may have brought more money into the estate, there was no evidence that the executor's decision to farm the orchard until a buyer was found was based on anything other than the advice of experts. Thus, the finding that the executor's course of action was based upon reliable advice was not against the manifest weight of the evidence.

¶ 15                              B. Attorney Fees to the Estate's Attorney

¶ 16 The beneficiary argues that the fees paid to the estate's attorney were not reasonable and accounted for. In addition, a $250,000 payment to the attorney attributed to the lack of funds available to pay the estate taxes. The executor contends that the beneficiary failed to present any evidence that the attorney fee was unreasonable.

¶ 17 Section 27-2 of the Probate Act of 1975 (Probate Act) provides that an attorney is entitled to reasonable compensation. 755 ILCS 5/27-2(a) (West 2016). In determining the reasonableness

5

of the attorney's compensation, courts consider the size of the estate, the amount of work done, the skill of the attorney, the time required, the advantages gained for the estate, and the diligence and good faith of the attorney. *In re Estate of Miller*, 197 Ill. App. 3d 67, 71 (1990). A trial court's determination of the reasonableness of compensation is reviewed for an abuse of discretion. *Id.*

¶ 18    The record indicates that the executor entered into a legal services contract with Attorney James Tungate on March 6, 2013, reflecting a billing rate of $250 per hour and an initial payment of $5000. The estate was valued at approximately $15 million and it consisted mostly of property that needed to be sold. While there were hourly billings by Tungate from March 2013 through April 2014, the executor wrote a $250,000 check to Tungate on May 20, 2014. The executor testified that he was advised by Tungate that making the lump-sum payment at that time might help secure the section 6166 election from the Internal Revenue Service (IRS). The executor understood that payment was for services already provided and for future services that Tungate was going to provide.

¶ 19    Tungate testified that the $250,000 fee reflected 1000 hours at $250 an hour. The trial court accepted the argument that the additional hourly fees that were charged after September 2015 were for additional work on the estate that was not anticipated at the time of the lump sum payment. Considering the relevant factors in determining the reasonableness of the attorney fees, particularly the size of the estate, the amount of time and work necessary to liquidate the estate, and the additional work needed to address the objections to the accounting, we find no abuse of discretion in the trial court's conclusion that Tungate's fees were reasonable. Tungate's testimony was sufficient to establish the value of his legal services, see *In re Marriage of Salata*, 221 Ill. App. 3d 336, 338-39, and the beneficiary did not present any evidence to the contrary.

¶ 20    As to the timing of the payment to Tungate, the executor testified that he paid that amount to Tungate at the time the section 6166 election was made, based on advice from the estate accountant that having made the payments would help secure the section 6166 extension. Again, the finding that the executor's course of action was based upon reliable advice was not against the manifest weight of the evidence.

¶ 21                                    C. Estate Taxes

¶ 22    The beneficiary argues that the executor mismanaged the estate by failing to timely pay the estate taxes. The executor contends that the estate taxes were paid in a timely manner in accordance with the federal estate tax system.

¶ 23    The estate sought an extension from the IRS to file a return and pay the federal estate taxes, which was stamped received by the IRS on December 3, 2013. The extension was granted, and the return, indicating a federal estate tax of $2,652,893, was filed on May 13, 2014. The return indicates that the executor sought to pay the taxes in installments, known as a section 6166 installment payment election. Tungate testified that he provided legal services to the decedent and, later, the decedent's estate. He prepared the estate tax returns. He testified that an extension to file and pay the federal tax return was filed on time—within nine months of the decedent's death. Tungate indicated that the section 6166 installment election was made because the estate consisted of a lot of property and some of that property needed to be liquidated to pay the estate tax. The effect of the 6166 election was to allow the estate to pay a significant down payment toward the tax, and then pay the balance in installments, subject to a 2% per annum charge by the IRS. The IRS determined that the first installment should be $708,767.56, and the executor paid in excess of that by sending a check for $750,000 by May 20, 2014. According to Tungate, the IRS lost the check, so additional interest was accrued, and the estate was assessed a penalty of $37,036.08 and

7

additional interest. After Tungate proved that the check was sent and was negotiated by the IRS, the estate received refunds from the IRS totaling $38,408.04 for interest and/or penalties. Tungate testified that the estate would have to file suit against the IRS to recover any additional penalties or fees, which would prolong the estate, so he recommended the executor not do so. The executor testified that he took Tungate's advice and did not file suit against the IRS. He paid the balance of the estate taxes in the amount of $1,972,057.67 on February 3, 2015. The executor testified that he had 10 years to pay the taxes, but the sale of Valley Farms allowed him to pay the balance, stop accruing interest, and close the estate.

¶ 24       While an executor is responsible for paying inheritance taxes in a timely manner, and the failure to do so can be grounds for removing an executor, see *In re Estate of O'Brien*, 166 Ill. App. 3d 285 (1988), the evidence established that the estate did not properly incur any late-payment penalties. Although penalties were assessed, they were assessed in error and refunded by the IRS. The estate did incur interest charges in accordance with the section 6166 election, but the evidence establishes that the executor chose that course of action based upon the advice of the estate's attorney and accountant. The beneficiary did not offer any evidence that the estate was sufficiently liquid so that the entire estate tax could be paid when the federal return was filed. Absent such evidence, it was reasonable for the executor to rely on the advice of counsel.

¶ 25       The executor testified that he paid the $250,000 fee to Tungate before filing the estate tax return on the advice of Tungate and the estate's accountant. They advised the executor to do so in order to secure the section 6166 election. Again, it was reasonable for the executor to rely on the advice of the attorney and accountant handling this complex estate, and their combined advice was that the section 6166 installment election was necessary to avoid payment penalties. Thus, the

8

trial court's determination that the executor's actions did not result in waste or mismanagement was not against the manifest weight of the evidence.

¶ 26                                                D. Legal Malpractice Claim

¶ 27        The beneficiary argues that the executor should have filed a legal malpractice claim against Tungate for his advice regarding loans, fees, and the administration of the estate. The executor argues that the beneficiary failed to present any evidence or expert testimony in support of his allegation of malpractice.

¶ 28        The allegations of misconduct in this case occurred in a complicated case, so expert testimony would be required in a malpractice action against the attorney. See *Fox v. Seiden,* 2016 IL App (1st) 141984 (a plaintiff must establish the standard of care against which an attorney's conduct must be measured through expert testimony, except in rare cases when an attorney's negligence is so grossly apparent that a lay person would have no difficulty in appraising it). The beneficiary failed to offer any expert testimony to support a claim of legal malpractice. Thus, we find that the trial court's ruling directing a finding in favor of the executor on this issue was not against the manifest weight of the evidence.

¶ 29                                                E. Shewami Golf Course

¶ 30        The beneficiary argues that the executor failed to account for the decedent's interest in a lot on the Shewami Golf Course. The executor acknowledges that the Shewami lot was never listed or disclosed in any inventory or in the final accounting, contending that an ownership interest was never established.

¶ 31        The decedent's son, Dominick Imburgia, testified that the decedent had acquired an interest in lots on the Shewami Golf Course with two other people and held them in a land trust. Tungate testified that although he investigated the matter, he was not able to identify such an interest.

9

Tungate researched the records of the county recorder of deeds and was unable to identify any interest of the decedent in the property. The executor testified that he was advised by Tungate that it would cost more to clear the title in the property than the property was worth. The executor relied on that advice in deciding not to pursue the Shewami lot.

¶ 32    The trial court directed a finding for the executor with respect to any interest of the decedent in the Shewami lot and overruled the beneficiary's objection to the lot not being included in the final accounting. The court found that the beneficiary failed to present any credible evidence of the decedent's interest, if any, in the lot or the value of the lot and as such the directed finding was appropriate and not an abuse of discretion.  Further, as it was reasonable for the executor to rely on the advice of counsel, the trial court's overruling of this objection was not against the manifest weight of the evidence.

¶ 33        F. Chicago Bears and Cubs Season Tickets and Personal Seat Licenses

¶ 34    The beneficiary argues that the executor failed to account for the professional sports' tickets and personal seat licenses (PSLs) owned by the decedent. The beneficiary contends that the trial court erred when it refused to allow him to present evidence as to value.

¶ 35    The trial court found that there was no evidence of value, so the executor did not need to account for them. After an objection to testimony by the beneficiary regarding the value of the season tickets, the beneficiary presented an offer of proof. In the offer of proof, the beneficiary stated that he did not know any value of the Chicago Cubs tickets. He offered evidence from the Chicago Bears website listing similar PSLs for sale, but the trial court found that was not evidence of value or fair market value but only evidence of an asking price.

¶ 36    The executor testified that he did not include either in the estate because they were personal property and could not be transferred. The executor testified that the Chicago Cubs season tickets

were a right to purchase that expired on the death of the season ticket holder. The executor, in his individual capacity, personally purchased the season tickets after the decedent's death. He testified that no one else expressed an interest in purchasing them.

¶ 37 The executor testified that the Chicago Bears PSLs had a value, but they were purchased by the decedent through his company, Quality Service Electronic (QSE). The executor testified that he did not list them in the personal estate because they were an asset of QSE, which was part of the estate. The Chicago Bears PSLs were an asset that was accounted for in the valuation of QSE and included with the sale of QSE. We review evidentiary determinations for an abuse of discretion. *Jackson*, 402 Ill. App. 3d at 235. We find no abuse of discretion in not allowing the evidence offered by the beneficiary to establish the value of the Bears PSLs. Since the Bears PSLs were not an asset of the decedent's estate, but were included with the sale of QSE, the evidence was not relevant to the value of the decedent's estate.

¶ 38 It is troubling that the executor purchased the decedent's right to purchase Cubs season tickets, since he had a "duty to serve the interests of the beneficiaries with complete loyalty, excluding all self-interest, and is prohibited from dealing with the trust property for his individual benefit." *In re Estate of Halas*, 209 Ill. App. 3d 333, 344 (1991). However, the executor testified that the right to purchase was a personal right that could not be transferred upon the decedent's death, so the right was not an asset of the estate. Also, the beneficiary did not attempt to introduce any evidence of the value of the right to purchase the Cubs season tickets. Thus, we find that the trial court's determination that there was no breach of the executor's duty with respect to the right to purchase the Cubs tickets was not against the manifest weight of the evidence.

¶ 39 G. Property Located at 111 East Chestnut Street, Chicago

11

¶ 40       The beneficiary contends that the executor failed to account for the sale of a Chicago condominium located at 111 E. Chestnut Street because he did not include the sale on the final accounting. The executor contends that there was no receipt accounted for in the estate for the sale of the Chestnut Street property because it had a mortgage and was underwater at the time of sale. The property was listed in the estate's inventory and the final amended accounting, which reflects a disbursement of $102,500 to Chicago Title/Bank of America to pay off the mortgage on the Chestnut Street property.

¶ 41       The Probate Act requires an executor to account for all the receipts of and disbursements from the estate, in addition to accounting for the proceeds of every sale or mortgage of real estate. 755 ILCS 5/24-1, 20-12 (West 2016). In this case, the inventory filed with the court on May 17, 2013, included the condominium located at 111 E. Chestnut Street. The executor testified that he sold the property in the administration of the estate, but more was owed on the Chestnut Street condominium than it was worth. Thus, the executor stated that there was no receipt on the accounting from the sale, only a disbursement to pay the balance of the mortgage. The closing documents were not in the record on appeal and the executor could not recall the sale price of the condominium. However, the estate tax return indicates that the condominium was sold for $929,000, with an outstanding mortgage of $1,015,000. The settlement statement was attached to the return, indicating that it was sold on August 29, 2013.

¶ 42       Since there was no evidence, or suggestion, that the condominium was sold for less than market value, we find that the trial court's conclusion that the record of the disbursement was a sufficient accounting for the sale of the Chestnut Street property and did not render the accounting incomplete was not against the manifest weight of the evidence.

¶ 43                            CONCLUSION

¶ 44        The judgment of the circuit court of Iroquois County is affirmed.

¶ 45        Affirmed.